Peter KLAPATCH, Plaintiff,

v.

Robert H. FINCH, Secretary of Health, Education and Welfare, Defendant.

Civ. No. 68–100.

United States District Court
M. D. Pennsylvania.

March 31, 1969.

Joseph F. Dutka, Olyphant, Pa., for plaintiff.

Bernard J. Brown, U. S. Atty., Scranton, Pa., for defendant.

MEMORANDUM

NEALON, District Judge.

Before the Court is a motion by the Secretary of Health, Education and Welfare for summary judgment in an action brought by plaintiff, Peter Klapatch, under Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review a final decision of the Secretary that plaintiff is not entitled to disability insurance benefits and establishment of a period of disability by reason of a disability as defined in 42 U.S. C. §§ 416(i) and 423.

Plaintiff was born in 1912 and completed seven years of elementary school. He was employed for two years in a silk mill, four years in a bobbin manufacturing plant, and twenty-six years in a coal mine. Thereafter, he worked as a berry picker, a junk yard laborer and a garbage collector. He ceased work on September 29, 1966.

Claimant filed his application for benefits on November 1, 1966, alleging anthracosilicosis as his disabling condition. He was notified on May 18, 1967, of the denial of his claim. Reconsideration was sought, but notice of denial was sent to claimant on August 18, 1967. A

hearing was ultimately held on December 4, 1967, pursuant to claimant's request.

The Hearing Examiner, finding that claimant met the special earnings requirements through September 30, 1968, found that the medical evidence did not support a finding of disability. This was affirmed by the Appeals Council on February 21, 1968. It is noteworthy that the Hearing Examiner arrived at his decision pursuant to the 1968 Amendments to the Social Security Act.

The history of Social Security disability cases in this Court reveals that there has been a steady stream of reversals of the Secretary because we concluded that he was applying too stringent a test in determining a claimant's "inability to engage in substantial gainful activity." Our attitude and action in this regard was substantially similar to most Federal Courts throughout the country. Because of this conflict, Congress amended the Social Security Act, effective January 2, 1968, Public Law 90–248, and the effect of these amendments is now before us for the first time. The amendments that are pertinent here relate to the term "disability" and may be summarized as follows:

Prior to the amendments, the Act defined disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. It was the interpretation and application of this definition that caused the conflict between this Court and the Secretary; we concluding, as hereinbefore mentioned, that the Secretary was applying too stringent a test. When the 1968 Amendments were being considered, it is obvious from the legislative history that Congress was concerned about the manner in which the disability definition was being interpreted by the Courts and indicated that these interpretations were

factors contributing to the rising cost of the disability insurance program. See The Senate Report (Financial Committee) No. 744, November 14, 1967, 2 U.S. Code Cong. & Admin. News, 90th Congress, 1st Session, 1967, pp. 2280–2283. Furthermore, the Report noted: "(t)he committee has also learned that there is a growing body of court interpretations of the statute which, if followed in the administration of the disability provisions, could result in substantial further increases in costs in the future." The Committee therefore proposed "* * * more precise guidelines that are to be used in determining the degree of disability which must exist in order to qualify for disability insurance benefits." Among the guidelines finally included in the 1968 Amendments and contained in Title 42 U.S.C.A. § 423, were the following:

"(d) (2) For purposes of paragraph (1) (A)—

(A) an individual (except a widow, surviving divorced wife, or widower for purposes of section 402(e) or (f) of this title) shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

\* \* \* \* \* \*

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results

from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

"(4) The Secretary shall by regulations prescribe the criteria for determining when services performed or earnings derived from services demonstrate an individual's ability to engage in substantial gainful activity. Notwithstanding the provisions of paragraph (2), an individual whose services or earnings meet such criteria shall, except for purposes of section 422(c) of this title, be found not to be disabled.

"(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

As a result, (a) the Secretary was empowered to adopt regulations prescribing certain criteria for determining an individual's ability to engage in substantial gainful activity; (b) the claimant is obligated to furnish such medical and other evidence of the existence of a disability as the Secretary may require; (c) a claimant is entitled to disability status only if his physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether a specific job vacancy exists for him or whether he would be hired if he applied for work, and (d) his impairment must be demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

The conclusion is inescapable that Congress was of the opinion that the liberal interpretation by the Courts of the term disability was jeopardizing the condition of the fund and that more specific guidelines had to be utilized and satisfied before one could qualify for benefits.

■ With reference to the function of this Court in the matter before us, if the findings upon which the administrative conclusion is based are supported by substantial evidence, the determination of the Secretary must stand, since 42 U. S.C. § 405(g) accords conclusive finality to "the findings of the Secretary as to any fact, if supported by substantial evidence * * *." And this is so even though a contrary conclusion might be reached by the Court on the same facts. "The Secretary, and not the courts, is charged with resolving conflicts in the evidence, and it is immaterial that the evidence before him will permit a conclusion inconsistent with his." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir.1964).

■ Substantial evidence must be enough to justify, if the trial were to a jury, a refusal to direct a verdict, when the conclusion sought to be drawn from it is one of fact for the jury. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660 (1939); Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

■■ The burden of proof to establish disability such as asserted by plaintiff here is on the claimant. Conflicting evidence is for the Secretary to resolve. Brasher v. Celebrezze, 340 F.2d 413 (8th Cir.1965).

In the case before us, the Hearing Examiner determined that the claimant is suffering from anthracosilicosis; that the impairment to his respiratory system is a moderate one; that he is unable to continue in his former employment as a laborer or miner, but that he is capable of substantial gainful activity in light and sedentary jobs, and that he

is able to perform the job requirements of a variety of jobs existing in the American economy and specifically in the area of his residence. He described claimant's appearance as demonstrating "* * * neither gross signs of ill health nor acute distress." He pointed out that claimant had not registered with the Bureau of Employment Security and had made no appreciable effort to obtain work. Moreover, he reasoned that claimant left his employment as a garbage collector on September 29, 1966, in order not to prejudice his right to Occupational Disease benefits under Pennsylvania law.

The evidence in this case consisted of the oral testimony of claimant and Dr. Joseph A. Szuhay, a vocational expert, as well as medical reports submitted by Dr. S. R. Pettinato and Dr. Edward P. Swartz. It is evident that the Hearing Examiner gave little weight to claimant's complaints about shortness of breath and pain, pointing out that he is not required to accept them at face value, especially in view of the lack of supporting medical data.

Three doctors examined plaintiff. In 1963, Dr. Joseph J. O'Brien, a radiologist, performed an X-ray and found no evidence of an infection or primary or metastic malignancy. His impression was bilateral grade #2 anthracosilicosis.

From October, 1966, to March, 1967, Dr. Salvatore R. Pettinato, a general practitioner, examined claimant monthly. A December, 1966, X-ray disclosed anthracosilicosis, Stage III, with bilateral emphysema. His diagnosis, after his monthly examinations, was anthracosilicosis, Stage III, bilateral moderately advanced emphysema.

Dr. Edward P. Swartz, an internal medicine practitioner with a subspeciality in pulmonary diseases, examined claimant on two occasions—March 20, 1967, and July 18, 1967. His March summary indicated no chest wall deformity, no clubbing of his fingers, no emphysema, no chest pain, cyanosis or dyspnea, and concluded that the claimant's medical prognosis and capacity for work was "good." Dr. Swartz performed a lung X-ray as part of his examination and concluded that the lungs were normal. In addition, ventilation studies were performed and no impairment appeared. His July examination indicated no appreciable change in physical status since March and the blood gas studies performed indicated an adequate gas exchange and pulmonary reserve.

Subsequent to the hearing in this case, Dr. Pettinato submitted a statement to the effect that while he declared plaintiff totally disabled, plaintiff could perform sedentary work, not in excess of two to three hours per day for any sustained period.

As can be seen, the findings of Dr. Pettinato and Dr. Swartz were in conflict. The Examiner was impressed by the more specialized means utilized by Dr. Swartz in regard to cardiac pathology and also his analysis of ventilatory studies, blood gas studies and exercise tolerance tests. Consequently, he concluded that plaintiff's impairments were not of such severity as to preclude him from engaging in any substantial gainful activity under the Act. The Examiner was similarly impressed by the testimony of Dr. Szuhay, which he referred to as follows:

"In this regard a well qualified vocational expert testified at the hearing to the effect that even assuming the existence of impairments based on the objective findings of record and considering claimant's past employment experience, education, and age, various types of light or sedentary employment would be within claimant's occupational qualifications and could be adequately performed by him. Further the testimony disclosed that such jobs are available to the claimant even with his impairments."

Dr. Szuhay had testified that such jobs were actually listed in the Olyphant Office of the Bureau of Employment Security and that similar openings (gluer and packer) existed at Billig Shoe Com-

pany, one and one-half miles from plaintiff's residence, and in the local garment industry (floor bundlers). The Examiner adopted the validity of his opinions and conclusions.

It is within the province of the Hearing Examiner to accept the testimony of Dr. Szuhay and Dr. Swartz provided it is competent and meets the substantial evidence test. It is worth noting that he found against the plaintiff in every instance where there was a factual dispute. Of course, plaintiff did not help his cause any by failing to seek other employment or to register with the Pennsylvania Bureau of Employment Security.

Therefore, in light of the new criteria under the 1968 Amendments and after a careful review of the record in this case, I cannot conclude that the Secretary's findings and conclusions were not supported by substantial evidence. Accordingly, defendant's motion for summary judgment will be granted.

The decision reached today is not to be interpreted as an indication that there will be carte blanche approval of future actions of the Secretary in denying benefits in Social Security cases, especially those involving anthracosilicosis. Each case must be determined on its own facts, notwithstanding the fact that the qualifying road has been made more difficult by the 1968 Amendments. It is hoped that the satisfying of plaintiff's burden of proof will be judged in a practical way, Bernstein v. Ribicoff, 192 F.Supp. 138 (E.D.Pa.1961), and, mindful of the informality of the proceedings and the remedial purposes of the Act, that the Hearing Examiner will assist in whatever way possible to see that the plaintiff is given full opportunity to develop his case in order that justice will be done. We will continue to view anthracosilicosis cases with great concern and will not hesitate to reverse the Secretary if he fails to give due consideration to the problems and consequences flowing from this dreaded disease.