**Edward C. ULBRICK, Plaintiff,**

v.

**Elliott L. RICHARDSON, Secretary, Department of Health, Education and Welfare, Defendant.**

**Civ. A. No. 71–115.**

United States District Court,
W. D. Pennsylvania.

Oct. 27, 1971.

Swope & Swope, Ebensburg, Pa., for plaintiff.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., for defendant.

OPINION and ORDER

McCUNE, District Judge.

The plaintiff Ulbrick had applied on November 9, 1968, to the Social Security Administration for determination of a disability period and for disability insurance benefits under 42 U.S.C.A. §§ 416(i) and 423. The Bureau of Disability Insurance advised plaintiff on May 12, 1969, that his application had been denied. Plaintiff's request for reconsideration resulted in an affirmation of the initial determination. He thereafter requested a hearing which was held on July 8, 1970. The determination of the

hearing examiner, that plaintiff did not suffer a disability as defined in 42 U.S. C.A. § 423(d), was upheld by the Appeals Counsel. That determination thereby became the final decision of the Secretary of Health, Education and Welfare. Having exhausted his administrative remedies the plaintiff brought this appeal under 42 U.S.C.A. § 405(g). Defendant moved for summary judgment under Rule 56. The parties have filed briefs and also a request that the Court, as is permitted under 42 U.S.C.A. § 405(g) dispose of the case without holding oral argument.

■ Judicial review of administrative determinations made in Social Security claim cases is limited to the question of whether there is substantial evidence in the record to support that determination.

"(g) Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business. * * * As part of his answer the Secretary shall file a certified copy of the transcript of the record including evidence ˙upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. * * * *" 42 U.S.C.A. § 405(g).

■ Our role in this review is to insure that the claimant is not treated in an arbitrary or capricious manner. His claim must be seriously received, investigated and disposed of in conformance with the statute. Resolutions of conflicting evidence, and credibility are matters for the administrative agency, Klapatch v. Finch, 297 F.Supp. 976 at 979 (M.D.Pa.1969) and if the agency's resolution is supported by substantial evidence we have no power to disturb its findings.

In the context of administrative law the Supreme Court had defined substantial evidence as:

"* * * more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' [citation omitted] and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought is one of fact for the jury." N. L. R. B. v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939).

If there is evidence from which reasoning minds might arrive at contrary conclusions and if the conclusion of the Secretary is possibly a different one than this court might have reached on the same evidence, we have no power to disturb the Secretary's conclusion.

The statute creating the right to disability payments provides:

"(a) (1) Every individual who—

(A) is insured for disability insurance benefits. * * *,

(B) has not attained the age of sixty-five,

(C) has filed application for disability insurance benefits, and

(D) is under disability. * * *
shall be entitled to a disability insurance benefit. * * *

* * * * * *

"(d) (1) The term "disability" means
—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;

\* \* \* \* \* \*

(2) For purposes of paragraph (1) (A)—

(A) an individual \* \* \* shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

\* \* \* \* \* \*

(3) For purposes of this subsection, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

\* \* \* \* \* \*

(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C.A. § 423(d).

Subsection (d) was extensively amended by Act of Jan. 2, 1968, Publ.L. No.90–248, tit. I, § 158(b), 81 Stat. 833, 867. The Congressional history of this amendment shows that its purpose was to eleviate the rising costs of the disability program, which were substantially attributable to liberal construction of the term "disability" by the courts, see, *e.g.*, Baker v. Gardner, 362 F.2d 864 at 868 (3d Cir. 1966). The addition of paragraph (2), 42 U.S.C.A. § 423(d) (2) and particularly subparagraph (A) thereof appears to be directed at that line of cases which held that substantial gainful employment meant that upon showing an inability to engage in his prior work an applicant shifted the burden to the Secretary to show by substantial evidence that there were actual jobs available to the particular applicant. See, *e.g.*, Baker v. Gardner, 362 F.2d 864. The Congressional history is unequivocal in stating that the intent of the 1968 amendment was to restrict the coverage of the disability program to those incapable of performing any work. Job availability is not a proper consideration under the 1968 amendment.

"It is \* \* \* the intent of the statute to provide a definition of disability which can be applied \* \* \* without regard to \* \* \* local hiring practices or employer preferences." \* \* \* H.R.Rep.No.544, 90th Cong., 1st Sess. 30 (1967).

The effect of the 1968 amendment has been recognized in this circuit, Gentile v. Finch, 423 F.2d 244 (3d Cir. 1970), *reversing* Gentile v. Gardner, 298 F. Supp. 1401 (W.D.Pa.1969), Klapatch v. Finch, 297 F.Supp. 976 (M.D.Pa.1969), and Starvis v. Finch, 315 F.Supp. 854 (W.D.Pa.1970).

 The plaintiff, Edward Ulbrick, was born September 18, 1921. He completed seven years of school. When he left school he went to work as a coal miner but was required to quit because of his age. He worked for a junk dealer for several years. On his eighteenth

birthday he went back to work as a coal miner. From then until March 6, 1968, he was employed in various capacities in connection with coal mining. According to his testimony much of this time he spent as a bulldozer operator in strip mining operations. He claims that as of March 6, 1968, he had to quit working as a consequence of breathing difficulties and difficulties with his upper extremities.

The medical evidence of record consists of the reports of three doctors, Dr. DeMatteis, Dr. Bell and Dr. Blide. The reports of the first two are based on their respective examinations of the plaintiff. The report of the last is apparently based on the materials contained in the other reports.

Dr. DeMatteis concluded from X-rays and ventilation studies that plaintiff was permanently and totally disabled as a result of coal miners pneumoconiosis (anthrocosilicosis).

Dr. Bell conducted two examinations of the plaintiff.´ At the first he conducted ventilation studies (spirogram) and had X-rays taken. His conclusion after this examination was that plaintiff suffered from bronchial asthma and hypertensive cardiovascular disease. His report stated that plaintiff should not be considered totally or permanently disabled. It appears that the findings of Dr. DeMatteis and Dr. Bell (first examination only) were submitted to Dr. Blide, a cardiopulmonary specialist. Dr. Blide concluded that the plaintiff suffered at most a mild airway obstruction. "It is felt that the claimant should be able to engage in moderate to arduous work * * *" (Report of Dr. Blide, page 130 of Record of Proceedings).

Dr. Blide viewed the hypertensive cardiovascular disease as inconsequential.

Plaintiff was again sent to Dr. Bell, who conducted blood tests to determine the efficiency of plaintiff's oxygen-carbon dioxide exchange. Dr. Bell's diagnosis remained unchanged; bronchial asthma and hypertensive cardiovascular disease.

Plaintiff testified that because of his shortness of breath and the weakness of his arms and shoulders, he was unable to do any work.

Confronted with the conflicting evidence as to the degree of plaintiff's impairment, the hearing examiner resolved the conflict adversely to the plaintiff. The hearing examiner did conclude that plaintiff could not return to his old occupation. However, based on the evidence of a vocational expert, Mr. Karn, the examiner concluded that plaintiff's impairments did not preclude plaintiff from engaging in substantial gainful activity. The hearing examiner found that there existed a number of positions of a light and unskilled nature within plaintiff's vocational capabilities and that such positions existed in significant numbers near plaintiff's home.

As noted above if these findings of fact are based on substantial evidence whether or not conflicting in nature, we have no power to disturb them.

The statement of facts set out above does show substantial evidence in support of the examiner's conclusions, which conclusions were adopted by the Secretary.

Defendant's motion for summary judgment is granted and an order follows.