**Orby L. DeLOACH, Plaintiff,**

v.

**Robert H. FINCH, Secretary of Health, Education & Welfare, Defendant.**

**Civ. A. No. 68–C–128–A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

April 20, 1970.

Robert T. Winston, Jr., Norton, Va., for plaintiff.

William C. Breckinridge, Asst. U. S. Atty., Roanoke, Va., for defendant.

WIDENER, District Judge.

■ The claimant, Orby L. DeLoach, on December 21, 1967, applied for a period of disability, commencing August 14, 1964, and for disability insurance benefits under sections 216(i) and 223 of the Social Security Act, as amended, 42 U. S.C. § 416(i) and § 423 (Supp.1969). His application was denied on March 9, 1968, by a decision of the Secretary of Health, Education and Welfare, who found that the claimant had not been under a disability as defined by the Social Security Act at any time prior to December 31, 1968, the date of expiration of the claimant's insured status. 42 U. S.C. §§ 416(i) (3) and 423(c) (1), as amended (Supp.1969). This decision became final on December 6, 1968, when the Appeals Council affirmed the hearing examiner's decision. Aggrieved, claimant requests this court to review and reverse the decision of the Secretary under § 205(g) of the Act, 42 U.S.C. § 405(g), which section provides that the court may set aside the findings of the Secretary only if they are unsupported by "substantial evidence". Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). For reasons which follow, the court finds the decision of the Secretary is supported by substantial evidence and is affirmed.

Claimant, who is fifty-three years old and has a fifth grade education, lives with his wife and one of his three children in Clintwood, Virginia. The bulk of claimant's work experience has been in the coal mines, where he spent 17 or 18 years as a timberman, trackman, and pinning machine operator. He was injured in the mines in 1959, but he subsequently returned to work. In 1961, he was laid off in the mines, and he drew unemployment compensation through the winter of that year. In 1962, he began working for Dickenson Builders as a manual laborer. He now claims that he has been unable to work since August 14, 1964, primarily because of chest and back pains which prevent him from performing all except light tasks.

The hearing examiner, although conceding that the claimant's ailments would preclude his engaging in heavy labor, nevertheless found certain types of light work to be within claimant's residual capabilities. Jobs as a metal deburrer, a checker, an attendant at an automatic car wash, a furniture rubber, a taxi cab driver, and a night watchman were suggested. These findings were to some extent based on the testimony of a vocational expert who testified at claimant's hearing. While this testimony is not accorded great weight, the medical evidence on which the examiner based his opinion is quite substantial.

The record is filled with medical reports dating from 1959 to 1968. However, because claimant made a prior application for social security benefits on December 10, 1964, and was denied them in a final decision of the Secretary on December 27, 1965, this court will only consider evidence which bears upon claimant's condition since December, 1965. All issues presented in claimant's first application are *res judicata* and will not be considered by this court. James v. Gardner, 384 F.2d 784 (4th Cir. 1967) cert. den. 390 U.S. 999, 88 S. Ct. 1205, 20 L.Ed.2d 99.

The pertinent medical evidence in the record consists of ten medical reports on claimant's condition, the latest being dated June, 1968. These reports establish that claimant is under no disability which would preclude him from engaging in substantial gainful employment.

The medical report most favorable to the claim of disability was written by Dr. P. G. Gregoriou, a general practitioner, on February 26, 1968. Dr. Gregoriou's impressions were cardiac neurosis, severe with depression; osteoarthritis of the neck and possible cervical disc; obesity; peptic ulcer history; hiatus hernia; PO coronary insufficiency; borderline diabetes mellitus; and hypertension, essential. Dr. Gregoriou stated in regard to claimant that "The chances of his returning to gainful activity are, in my opinion, poor. He

should be evaluated by orthopedists and internist."

The clinical findings and conclusions of every other medical examiner, including an internist as suggested by Dr. Gregoriou, support the Secretary's determination that the claimant is able to return to substantial gainful employment. The earliest report here pertinent is from the General Medical Care Clinic of Clintwood, Virginia. This report contains progress notes, urinalysis reports, and x-ray reports dated from April 15, 1964, to February 14, 1968. All the reports are negative. An electrocardiographic record made at the Dickenson Clinic on December 22, 1967, revealed essentially normal findings. A G.I. series performed by Dr. D. B. Jones, Radiologist, on August 28, 1966, led to the conclusion that there was "no x-ray evidence of an organic lesion of the upper G.I. tract. Gastric emptying, small bowel pattern, and mobility of the small bowel essentially normal." On December 22, 1967, Dr. D. B. Jones examined claimant's cervical spine. This report of that examination is as follows:

"X-rays in the AP and lateral views, shows no evidence of fracture, dislocation, bone pathology, subluxation, tracheal shift or cervical rib, except there is osteoarthritic changes of C-5 and 6 anteriorly and posteriorly and there is narrowing of the intervertebral space between C-5 and 6 suggestive of degenerative disc pathology. Segmental curvature and other intervertebral spaces are essentially normal."

A report dated November 16, 1967, made by Dr. J. M. Straughan, Radiologist, indicates that claimant does not have an ulcer.

On May 15, 1967, claimant was examined by the Veterans Administration for the purpose of determining his eligibility for pension benefits. Claimant's predominant complaints were heart trouble, stomach pains, arthritis and nervousness. Examination revealed that claimant's heart was regular in rate and rhythm. He had a good range of motion in all joints of the body. X-rays revealed moderate hypertonic arthritic changes with slight narrowing of the fifth cervical interspace and a tiny sliding herniation of the stomach through the esophageal hiatus. A psychiatric evaluation was made by Dr. Robert W. Beck, who concluded that claimant suffered from an anxiety reaction.

Claimant's latest physical examination was made on April 26, 1968, by Dr. J. A. Robinson, a specialist in internal medicine. After stating that claimant's head, neck, heart and lungs were normal, Dr. Robinson concluded,

"As far as we can tell Mr. DeLoach has no very definite evidence of cardiovascular disease. He does have a hiatus hernia which he probably has had all of his life, a chronic low back strain, and he evidently does have a cervical disc lesion and a mild degree of hypertonic arthritis of his spine. The man probably has a minimal degree of neurological symptoms about his upper extremities and chest in association with the cervical disc lesion and some of his chest pain also is evidently due to the hiatus hernia."

An x-ray report dated April 29, 1968, confirmed the presence of a small sliding type hiatus hernia. This was the only abnormality noted in the stomach. X-rays of the spine show a narrowing of the interspace between C-5 and C-6 with a little anterior and posterior spurring. X-rays of the chest showed claimant's lung fields to be clear. The heart was not enlarged. An EKG made on May 3, 1968, was normal.

The most current mental evaluation in the record was made by Dr. Marshall D. Hogan, a psychiatrist, on June 7, 1968. After his examination of claimant, Dr. Hogan concluded in part, "I do not see that his psychiatric diagnosis, which is anxiety reaction, chronic, mild, is of sufficient import to have much bearing on his activities either social or vocational * * *"

A preponderance of medical evidence is to the effect that the claimant's physical and mental impairments would not preclude his performing light or sedentary work. In the opinion of the court, the medical evidence is sufficient to protect the decision of the Secretary from reversal by this court.

Claimant's alleged heart condition is the predominant cause of his complaints. None of the examining physicians, however, detected anything wrong with claimant's heart. All the x-rays taken of claimant's heart show it to be normal in size and shape. All the EKG's have been normal. If there is anything wrong with claimant's heart, it is not demonstrable by medically acceptable clinical and laboratory diagnostic techniques. If claimant has no heart condition in fact, then his problem must be due to what is described as cardiac neurosis. However, neither the Veterans Administration nor Dr. Hogan described a patient who had a disabling psychological problem.

The medical evidence also supports the conclusion that claimant's back condition is not disabling. Claimant has what is described as hypertonic arthritis of the spine. The report from Dr. Robinson also indicates that claimant has a cervical disc lesion, but this is not labelled as disabling. The Veterans Administration doctors stated that claimant had a good range of motion in all joints and that he was able to perform normal activities, despite arthritic changes in his low back.

█ The burden of proving disability in this proceeding lies with the claimant. It is not the initial responsibility of the Secretary to prove nondisability. Justice v. Gardner, 360 F.2d 998 (6th Cir. 1966). Claimant must show by producing objective medical facts that he suffers from impairments which preclude him from engaging in substantial gainful employment. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966), Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). This burden, however, need not be carried to a point beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

█ It is also clear that the mere presence of a disease or impairment is not in and of itself disabling, but it must be shown that the disease or impairment causes functional limitations which preclude claimant from engaging in substantial gainful activity. Durham v. Gardner, 392 F.2d 168 (4th Cir. 1968), cert. den. Smith v. United States, 393 U.S. 941, 89 S.Ct. 308, 21 L.Ed.2d 278, Gotshaw v. Ribicoff, 307 F.2d 840 (4th Cir. 1962).

As the hearing examiner pointed out, it is irrelevant that certain employers may be reluctant to hire individuals who complain of back ailments. The question here is not whether the claimant might be hired by an employer if he applied for work, but rather, whether he is physically and mentally capable of performing work which exists in significant numbers in the national economy.

A review of the entire record convinces the court that the decision of the Secretary is supported by substantial evidence. Accordingly, an order is this date entered granting defendant's motion for summary judgment.