**Thomas E. RAMSEY, Plaintiff,**

v.

**Elliott L. RICHARDSON, Secretary, Health, Education and Welfare, Defendant.**

**Civ. A. No. 70–C–41–H.**

United States District Court, W. D. Virginia, Harrisonburg Division.

May 19, 1971.

William E. Bobbitt, Jr., Staunton, Va., for plaintiff.

William G. Davis, Asst. U. S. Atty., Roanoke, Va., for defendant.

OPINION and JUDGMENT

DALTON, Chief Judge.

This action is brought under section 205(g) of the Social Security Act, 42 U. S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. The decision rendered by the hearing examiner on August 7, 1970 denying the plaintiff his claimed disability insurance benefits, became the final decision of the Secretary when the Appeals Council denied the plaintiff's request for review on September 15, 1970. Plaintiff's claim for disability insurance benefits has been rejected at all levels of the administrative process and he now petitions the district court for review of the Secretary's decision. The sole issue before the court in this action is whether the Secretary's final decision denying the plaintiff his requested disability benefits is supported by substantial evidence.

In the present case the factual evidence is not in any real dispute. Only the conclusions and inferences to be drawn from the facts are contested. Claimant is fifty-nine years old and resides with his wife in Staunton, Virginia. They have no dependent children living at home. Plaintiff has a second grade education and has had no other vocational education. Plaintiff's major

---

work experience consisted of farming, driving a truck, and general heavy labor in the construction industry. More recently, the claimant had worked in the office of a general contractor taking service calls and doing simple tasks around the shop.

The plaintiff had filed a prior application for disability insurance benefits on September 21, 1964 due to his heart condition at that time. A period of disability was established for him from July 13, 1964 with entitlement to monthly benefits in February, 1965. Plaintiff's condition had improved in August, 1966 to the extent that he became able to do substantial gainful work and he was advised that the last disability check to which he was entitled was for the month of October, 1966. After reconsideration, the decision to terminate the plaintiff's benefits due to his improved condition was affirmed.

Claimant's second and current application for disability insurance benefits was filed on September 8, 1969 alleging September 5, 1969 as the onset date. His claim was disallowed both initially and upon reconsideration on the ground that his evidence on record was insufficient to prove that his impairment was disabling within the meaning of the statute. Subsequently, a hearing was held before a hearing examiner at which the claimant and claimant's two sisters testified. Additional medical evidence was introduced and the testimony of a vocational expert was taken. Upon the record before him, the hearing examiner concluded that the claimant's impairments were not sufficiently demonstrated as being so severe as to be disabling within the meaning of the Social Security Act. Accordingly, the hearing examiner found that the claimant was not entitled to a period of disability or to disability insurance benefits.

The medical evidence in the record is voluminous and contains the reports of many doctors and clinics stretching over a period of six years from 1964 to 1969. Dr. Eugene D. Nolley, a full time general practitioner in Churchville, Virginia

is the plaintiff's treating physician and has submitted five reports to the Administration concerning the plaintiff's condition. He has seen the claimant on numerous occasions, the first being September 26, 1966 and the last on June 1, 1970. Dr. Nolley's report of September 30, 1969 appears to summarize his findings. It recited that the plaintiff began to complain of "vague chest pain" in July, 1964. Since then he had periodically complained of vague chest pain and he was seen more often in the emergency room than in the doctor's office. Dr. Nolley noted that definite signs of cardiac failure had not been observed since February, 1965 and that it was doubtful that the pain the claimant was experiencing was of cardiac origin, although this couldn't be definitely established. Dr. Nolley concluded that the claimant has "arteriosclerotic heart disease and is believed to have coronary insufficiency with periodic angina, but the degree of his disability is extremely difficult to identify."

Plaintiff was also examined consultatively for evaluation of his heart condition by Dr. John H. Guss. He was seen by Dr. Guss on three different occasions, the first being in January, 1965. At that time Dr. Guss was of the opinion that he could not make a diagnosis of coronary artery disease with angina pectoris with the information at hand. He felt that the plaintiff's history was not typical of angina pectoris and, in fact, the history suggests pain probably originating in the chest wall. Dr. Guss suggested that a two-step Masters test be carried out on the plaintiff. In March, 1965 Dr. Guss and Dr. Nolley conducted this test at King's Daughters' Hospital in Staunton on the plaintiff. From the results of this test, Dr. Guss then concluded that the plaintiff was indeed suffering from coronary arteriosclerosis with insufficiency and that the plaintiff was disabled one hundred percent by angina pectoris. It was at this time that his first application for disability benefits was passed upon favorably.

Approximately a year and a half later, the claimant was again referred to Dr. John H. Guss for additional evaluation of his cardiac condition. The impression of Dr. Guss on August 11, 1966 after a thorough examination was as follows:

After reviewing the present work-up and in light of the previous work-up, I am still unable to be satisfied that this man has coronary insufficiency. The positive Masters Two-Step test previously was done during the administration of digitalis, and this may very well produce some ST segment depression after exercise. The history certainly is not consistent with angina pectoris. The physical findings are entirely normal, and I am inclined to think that this man does not have any disability from this. He certainly has infrequent pain and could be allowed to do at least moderate work without any danger.

Therefore, I would suggest that he be permitted to go back to work and be relieved of his disability.

Shortly after this report was submitted, the plaintiff was advised that his disability benefits would be discontinued. The discontinuance was reconsidered upon plaintiff's request and was affirmed due to his improved condition.

A report was entered into the record from Dr. Jesse D. Robertson, an internist, who had seen the claimant on two occasions while his treating physician, Dr. Nolley was on vacation. Claimant complained of chest pains on his visits to Dr. Robertson on September 1 and September 5, 1969. Dr. Robertson concluded that the claimant's problem was one of two things—either spasm or stretching of a visceral organ or it could be a musculoskeletal strain. It did not appear to Dr. Robertson that the claimant's pain was due to angina.

Claimant was also seen at the University of Virginia Out Patient Clinic during the months of October, November and December of 1969. No real change was noted in a Masters step test or in an electrocardiogram. The chest pain was noted on reports as questionable angina. Claimant was also examined consultatively by Dr. Edward U. Scherer, a board certified internist at the Chesapeake and Ohio Hospital in Clifton Forge, Virginia. Dr. Scherer's general impression based on his examination of July 27, 1970 and the patient's past history was that the plaintiff would have the capacity to perform sedentary to light activity on a sustained basis.

The testimony of a vocational expert, Mr. William G. Chrisman, Jr., was taken at the plaintiff's hearing. With regard to the plaintiff's age, education, work experience and his residual functional capacity, the vocational expert was questioned as to the availability of jobs which the plaintiff could perform as they existed in the national economy and especially in the region where the plaintiff resides. It was the judgment of the vocational expert, assuming that the hearing examiner would find that the claimant had the residual capacity to engage in up to light activity on a sustained basis, that the claimant could engage in some of his former work activity, such as taking service calls and performing simple tasks around a general contractor's office. Mr. Chrisman also enumerated four other jobs for which the plaintiff could qualify.

It was upon this evidence that the hearing examiner concluded that the plaintiff had not met his burden of demonstrating his infirmity to be of such severity as to be disabling within the meaning of the Social Security Act. It is the opinion of the court that there is abundant evidence in the record to support the decision of the Secretary denying the plaintiff his claimed disability insurance benefits. The plaintiff has fallen far short of showing that he is unable to engage in substantial gainful activity. In fact, the medical reports since his first period of disability was terminated would tend to show just the opposite to be true.

Accordingly, summary judgment should be and hereby is granted to the defendant.