**Jack Walter DAVIS, Plaintiff,**

v.

**Elliot RICHARDSON, Secretary, Health, Education and Welfare, Defendant.**

**Civ. A. No. 71–C–136–R.**

United States District Court,
W. D. Virginia,
Roanoke Division.

July 13, 1972.

Harlin Perrine, Salem, Va., for plaintiff.

Paul R. Thomson, Jr., Asst. U. S. Atty., Roanoke, Va., for defendant.

OPINION and JUDGMENT

DALTON, District Judge.

This action is brought under section 205(g) of the Social Security Act, 42 U. S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. The decision rendered by the hearing examiner on June 30, 1971 held that plaintiff was under a disability from March 1968 to August

1970 and was entitled to disability insurance benefits beginning with the month of October 1968 and ending with the month of October 1970. This decision became the final decision of the Secretary when the Appeals Council denied the plaintiff's request for review on October 5, 1971. The sole issue before the court in this action is whether the Secretary's final decision to grant disability insurance benefits from October 1968 to October 1970, exclusively, is supported by substantial evidence.

The standard by which the plaintiff's claim has been measured is that contained in section 223 of the Social Security Act, 42 U.S.C.A. § 423. Section 223(d) (1) (A) now provides that the term "disability" shall be defined as an

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to * * * last for a continuous period of not less than 12 months.

Section 223(d) (3) further develops the standard of proof required by providing:

For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

Section 223(d) (2) defines the degree of severity which is required for the claimant to be considered under a "disability" for the purposes of the Act by providing that

An individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or

whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Section 216(i) (2) (D) of the Social Security Act, 42 U.S.C.A. § 416(i) (2) (D) sets the time for final disability payments by providing that

A period of disability shall end with the close of whichever of the following months is the earlier; (i) the month preceding the month in which the individual attains age 65, or (ii) the second month following the month in which the disability ceases.

The claimant was born on May 9, 1926 in Tazewell County, Virginia and attended public school about seven years, completing the fourth grade. He is married and has a daughter and lives with his wife and daughter near Salem, Virginia. After the plaintiff left school, he worked on a farm until he moved to Virginia Polytechnic Institute (V.P.I.) in 1943, where he worked after World War II for five years as a general dairy farm hand. During the war, plaintiff served in the Seabees from 1944 to 1946 doing naval construction work. Upon leaving his job at V.P.I., plaintiff worked at a local dairy farm handling milk, feeding stock and cleaning utensils for four years. In 1955, plaintiff began work in a meat packing plant, his duties consisting of night cleanups and curing animal hides, which he continued for seven years. He subsequently worked as a carpenter's helper for a construction firm for three years before moving to Roanoke Electric Steel Corp. in 1966, where he worked as a helper on a steel melting furnace and also helped pour foundations and repair track. This involved laboring work of a heavy nature, which required shoveling heavy material. This job terminated on March 31, 1968, due to a back condition which required an operation for a her-

niated disc, performed on April 16, 1968 in Lewis-Gale Hospital in Roanoke.

The plaintiff has a history of back trouble, stemming from an injury to his back in 1959, at which time an operation for a herniated disc was performed, and in 1965, a similar additional operation was performed. After each operation, the plaintiff returned to the job he was then holding. On July 9, 1968, after his April operation, the plaintiff returned to his job with Roanoke Electric and sought transfer to another assignment, which was denied. He continued working as a helper at the melting furnace, but after five days he suffered another back injury while shoveling fifty pounds of silicon into a furnace. This injury was a strain of the lower back superimposed upon the recent surgical procedure for the correction of the herniated disc.

Plaintiff was rehospitalized on July 24, 1968, with recurrent right leg symptoms, and a cast was applied for a trial period and plaintiff was discharged on August 4, 1968. He was again readmitted to Lewis-Gale Hospital on November 20, 1968, complaining of pain of the right leg. It was felt advisable to try an epidural block, saline pack and decadron injection, along with exploratory surgery of soft tissue and periosteum. However, plaintiff became sick when the surgery was begun and it was discontinued. He was discharged on December 1, 1968.

On February 5, 1969, a medical examination by Dr. Richard H. Fisher, a board certified orthopedic surgeon at Lewis-Gale Hospital, revealed that plaintiff's condition was unchanged, that he exhibited "continued symptoms prohibiting heavy or strenuous work." He recommended that plaintiff engage in some light occupation and further indicated that if plaintiff's condition was not improved sufficiently within six to eight months that a spinal fusion be considered. On October 1, 1970, plaintiff was referred to vocational rehabilitation by Dr. Fisher, but the plaintiff indicated he was "not interested" in additional training or evaluation.

Plaintiff's condition remained unimproved and on November 14, 1969, Dr. Fisher performed a spinal fusion, using autogenous bone from the right iliac crest. In response to a questionnaire from the State Department of Vocational Rehabilitation, dated January 2, 1970, Dr. Fisher indicated that plaintiff was continuing to have discomfort and that he was still wearing a brace and had three-quarters limitation of back motion. The prognosis was good with return to work in six months.

On August 24, 1970, in a letter to Department of Vocational Rehabilitation, Dr. Fisher again recommended training by Vocational Rehabilitation. An additional copy of the same letter was resent on October 5, 1970. In December 1970, the plaintiff advised a representative of the Social Security Administration that he could not consider trying to work "until he gets his legs straightened out."

A report from Dr. Fisher dated April 12, 1971, submitting clinical notes taken on February 24, 1971 after a physical examination of plaintiff, reveals that plaintiff was offered occupational training as a barber but felt he was unable to do this because of pressure on his back. Upon examination it was found that plaintiff's back motion was normal with lateral bending without complaint. Dr. Fisher concluded that there was some hamstring tightness on leg raising and a 50% impairment of the spine which would prohibit heavy activity. However, he did not view further surgery as necessary and indicated that there would be hope for continued improvement if the plaintiff were engaged in a light occupation, such as barbering.

After the hearing, by arrangement through the state disability determination section, plaintiff was given an additional physical examination by Dr. John D. Varner, a neurological surgeon. On June 8, 1971, Dr. Varner reported he had first seen plaintiff in February 1960 and did a laminectomy of L-4 bilaterally with removal of a herniated disc. His examination revealed that the operative site in the lumbar region was

well-healed, but still exhibited some tenderness. There were also limitations of motion on flexion and extension and leg raising. Plaintiff claimed that he could not carry anything and that if he sat in a car for any length of time or if he did a great deal of walking, he then had a great deal of back pain and numbness in his legs. Based on his findings, Dr. Varner expressed the opinion that plaintiff could walk for four to six hours, sit three to five hours, lift frequently ten to twenty pounds, do simple grasping, pushing, pulling and fine manipulation. Plaintiff would also be able to occasionally bend, squat, crawl and climb. Dr. Varner felt plaintiff would not be able to do any heavy work but "certainly he should be able to do some moderate type of physical labor."

At the hearing, Dr. Carl O. McDaniels, an Associate Professor of Education at V.P.I., qualified as a vocational expert witness. Dr. McDaniels stated that in addition to skills and knowledge acquired in his excellent work record, the plaintiff retains his capacity for quick adaptation, attention to duty, promptness and dedication disclosed by his occupational performance. Considering these and other factors including claimant's education and work experience, Dr. McDaniels expressed his professional judgment that, although the plaintiff could not return to his last job in the melting furnace, there were various functions capable of being performed by him in various occupations with minimal or no on-the-job training.

Plaintiff's back impairment would limit him to lifting up to twenty pounds and would require that any prolonged activity be ambulatory, with a limitation on bending. Dr. McDaniels identified occupations which plaintiff could perform, to include building service jobs, including institutional jobs in schools and hospitals. He mentioned food service in hotels and restaurants, which does not require sustained effort for a lengthy time. Another field mentioned was that of animal care, with work in a veterinary hospital or in dog kennels.

Also mentioned were jobs as a guard or night watchman. Dr. McDaniels testified that such jobs exist both in the economy generally and in the area of plaintiff's residence.

There appears to be nothing in the record to support plaintiff's claim for additional disability insurance benefits. The plaintiff was disabled within the meaning of the Social Security Act, U.S. C.A. § 416(i) from March 1968 to August 1970 because of a back impairment. The sole question to consider is whether or not plaintiff's condition has improved to the extent that he is able to engage in some form of substantial gainful activity. The Secretary decided that plaintiff reacquired his ability to engage in substantial gainful activity in August 1970 and terminated his disability insurance benefits in October 1970. This decision is supported by substantial evidence.

It is settled law that the burden of proof rests upon the plaintiff to establish his entitlement to disability insurance benefits under the Social Security Act. Cyrus v. Celebrezze, 341 F.2d 192 (4th Cir.1965); Bias v. Finch, CCH UIR Fed. ¶ 16432 (S.D.W.Va.1971); Klapatch v. Finch, 297 F.Supp. 976 (M. D.Pa.1969). It is not the burden of the Secretary to make an initial showing of nondisability. Robles v. Finch, 409 F.2d 84 (1st Cir.1969); King v. Gardner, 370 F.2d 652 (6th Cir.1967); DeLoach v. Finch, 311 F.Supp. 903 (W.D.Va.1970).

The law provides that an applicant must establish "[an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment," 42 U.S. C.A. §§ 416(i), 423(d)(1)(A). Section 223(d)(3) defines a medically determinable physical or mental impairment as an impairment that results from an anatomical, physiological or psychological abnormality which is demonstrable by medically acceptable clinical and laboratory diagnostic techniques. Walters v. Gardner, 397 F.2d 89 (6th Cir.1968). It is not enough to establish that an impairment exists. It must also be shown

that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. Lewis v. Gardner, 396 F.2d 436 (6th Cir.1968); Gotshaw v. Ribicoff, 307 F.2d 840 (4th Cir.1962); Starvis v. Finch, 315 F. Supp. 854 (W.D.Pa.1970); DeLoach v. Finch, 311 F.Supp. 903 (W.D.Va.1970); Taylor v. Gardner, 284 F.Supp. 691 (W. D.Va.1968).

Dr. Fisher reported in August 1970 that plaintiff's back had healed and no additional surgery was necessary. Although plaintiff could not do heavy labor, he was physically able to engage in work of a light or moderate nature. Dr. Fisher repeated this opinion in a report dated April 1971, submitting notes taken from a February 1971 physical examination. This opinion was substantiated by another physician, Dr. Varner, a neurosurgeon in June 1971. In his opinion, plaintiff could engage in work requiring light to moderate physical activity. A vocational expert testified that although plaintiff could not return to his former job, there were a number of light jobs plaintiff was physically and vocationally able to do. Examples were cited and these jobs are available in the local and national economy.

■ If an insured individual suffers from an impairment which precludes heavy work, or work which requires certain physical exertion, but it is shown that he can engage in other light forms of substantial gainful activity, a "disability" within the meaning of the Act has not been established. Brown v. Finch, 429 F.2d 80 (5th Cir.1970); Woods v. Finch, 428 F.2d 469 (3rd Cir. 1970); Breaux v. Finch, 421 F.2d 687 (5th Cir.1970); Minton v. Finch, 419 F.2d 1328 (9th Cir.1969); Wells v. Finch, 418 F.2d 1247 (4th Cir.1969); Ramsey v. Richardson, 329 F.Supp. 641 (W.D.Va.1971); Calpin v. Finch, 316 F.Supp. 17 (W.D.Pa.1970).

■ For the foregoing reasons, it is the conclusion of this court that the Secretary's decision that the plaintiff reacquired his ability to engage in substantial gainful activity in August 1970 is supported by more than substantial evidence. Plaintiff has neither proved his disability by medically acceptable clinical or laboratory diagnostic techniques nor has he shown his inability to engage in any kind of substantial gainful employment existing in the national economy.

Accordingly, summary judgment should be and hereby is granted to the defendant, and the action is dismissed.