Lila C. MOON, Plaintiff,

v.

Elliot L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 71–C–53–D.

United States District Court,
W. D. Virginia,
Danville Division.

July 19, 1972.

Harold E. Pugh, Arthur, Harvey & Pugh, Altavista, Va., for plaintiff.

Paul R. Thomson, Jr., Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION AND JUDGMENT

DALTON, District Judge.

This action is brought under section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. The decision rendered by the hearing examiner on June 18, 1971 denying the plaintiff her claimed disability benefits, became the final decision of the Secretary when the Appeals Council denied the plaintiff's request for review on September 7, 1971. Plaintiff's claim for disability insurance benefits has been rejected at all levels of the administrative process and she now petitions the district court for a review of the Secretary's decision. The sole issue before the court in this action is whether the Secretary's final decision denying the plaintiff her requested disability insurance benefits is supported by substantial evidence.

Plaintiff makes her claim for child's insurance benefits under section 202(d) of the Social Security Act, 42 U.S.C.A. § 402(d), which provides that every child of an individual entitled to old-age or disability insurance benefits may be entitled to monthly benefit payments if such child, at the time of application,

was unmarried and dependent upon the individual at the time of his death and was under a disability, as defined in section 223(d), which began before the child attained the age of 18.

The standard by which the plaintiff's claim has been measured is that contained in section 223 of the Social Security Act, 42 U.S.C.A. § 423. Section 223(d) (1) (A) now provides that the term disability shall be defined as an

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to * * * last for a continuous period of not less than 12 months.

Section 223(d) (3) further develops the standard of proof required by providing

For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

And section 223(d) (2) defines the degree of severity which is required for a claimant to be considered under a "disability" for the purposes of the Act by providing that

An individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such

individual lives or in several regions of the country.

The claimant was born on November 24, 1921 in Pittsylvania County, Virginia, where she presently resides. She was married on November 24, 1937, when she was 16 years old, and her husband died February 16, 1969. Her father died the following year, on January 18, 1970. Four children were born during the marriage, the youngest presently being 26 years of age, and all being married. The plaintiff alleged that she had no use of her left arm due to an injury sustained when she was two years old. She claimed that her left shoulder was pulled out of place when she was two years old and thereafter her left arm was without strength and useless. She also alleged that her chest was irregular and that her heart was out of place due to the injury. She also claimed to have varicose veins.

The plaintiff attended public schools through the eighth grade and married upon leaving school. She claimed to be a housewife "all her life," and testified that she was assisted with the housework by her husband and hired help. She had not applied for jobs until the children were in school and extra money was needed.

She testified that in 1953 she worked for a month at a local drug store in Altavista, Virginia, where she made sandwiches and cooked hamburgers, but quit in order to care for her sick child. In 1954, she was employed for a short time as "extra help" at a gift shop in Altavista, the Vista Shop, where she worked at the fountain and waited on tables. In 1955 she worked in the warper room at Burlington Mills for a short time, placing spools upon machinery, but was discharged because of her inability to do this work. During the same year, she was employed three days by The Lane Company of Altavista, where she placed cotton pads on the bottom of miniature cedar chests and removed heavy boards from a ripsaw and stacked them. In 1969, after her husband's death, she worked three days for a vending ma-

chine company in the Burlington Mills commissary, where she washed dishes, made sandwiches, and supervised employees, including her two sons and a sister. Her earnings record showed she was paid wages of $215.70 in 1953, $193.44 in 1954, $50.00 in 1955, and $37.40 in 1969.

The plaintiff testified that because of the injury to her shoulder in early childhood, she was taken care of by her father and then by her husband so that she did not need to apply for a job. She expressed her belief that she was unable to work before age 18.

Dr. A. M. Owen, a retired general practitioner in Gretna, Virginia, was the plaintiff's family physician from 1921 until his retirement in the 1960's. In March 1970, Dr. Owen stated that in 1923 the plaintiff was brought to him with a very bad shoulder and was referred to a surgeon who found ruptured ligaments. Dr. Owen stated that the shoulder did not improve and the left arm atrophied and was never much good.

The plaintiff was examined on September 24, 1960, by Dr. Ernest G. Scott of Lynchburg, Virginia, a graduate of Harvard Medical School and a cardiovascular disease specialist. A cardiogram was taken and indicated her heart rate was normal and the heart examination was entirely negative. Everything was normal except for the left arm which he considered "almost useless." In a statement dated December 17, 1970, Dr. Scott remarked that the claimant had "a useless left arm (since age of 2) and is unable to hold down a job in industry."

Dr. Ralph C. Slusher, a general practitioner in Altavista, Virginia, and a graduate of the Health Sciences Division of Virginia Commonwealth University in Richmond, reported on April 21, 1971, that he had treated the plaintiff several times since February 1969 for grief reaction following the death of her husband and for phlebitis and varicosities of both legs. The physician also re-marked that nothing could be done about the plaintiff's left arm which was shortened and approximately one-half of normal size. It was Dr. Slusher's opinion that the plaintiff could not tolerate employment because of the handicapped arm and leg varicosities and she was not able to do heavy work or keep pace with a production job.

Dr. Robert D. Shreve, a general practitioner in Altavista and a graduate of the Medical College of Virginia, stated on March 5, 1970, that the left shoulder and arm were severely atrophied, making the left upper extremity useless. He also stated that the plaintiff was a poor employment risk.

During the hearing, Mr. Craig R. Colvin, an assistant professor at Virginia Commonwealth University and vocational rehabilitation expert, testified that he had been working with handicapped people in Virginia and North Carolina for the past five years and that his primary duties had been the placement of handicapped people in suitable employment and training counselors to work with handicapped people. The vocational expert's attention was directed to plaintiff's musculoskeletal impairment and he was asked whether he knew of any jobs in the national economy prior to November 23, 1939 (when plaintiff turned 18), or subsequent thereto, which he believed the plaintiff could perform. Mr. Colvin testified that he had placed in the furniture business people who had amputated upper extremities. In light of plaintiff's disability and considering her age, education and experience, the vocational expert stated that the plaintiff could do various jobs existing prior to November 23, 1969. Mr. Colvin mentioned the job of inspector at The Lane Company, a local manufacturer of cedar chests, in which the individual inspects legs, drawers and tops of chests coming off the assembly line. Another job mentioned was that of spot stainer or varnish stainer, similar to inspector, where the individual checks component parts and fills in spots missed in painting, using a hand applicator.

Other jobs cited were tube tester and tube sorter, which may be found at the General Electric Plant and Paktron in Lynchburg, Virginia. Mr. Colvin offered the opinion that the claimant, with her physical impairment, could perform these jobs and that the jobs mentioned at The Lane Company existed prior to 1939 and continued until the present time.

Subsequent to the hearing, evidence was produced by the plaintiff which indicates that General Electric did not open operations in Lynchburg until 1955 and Paktron Division of Illinois Tool Works, Inc. did not operate in Campbell County prior to 1969. The hearing examiner therefore disregarded any testimony contrary to these facts which were given by the vocational expert, Mr. Colvin. However, these are jobs which are in existence subsequent to 1939 and appear to be jobs that are within the physical capacity of the claimant to perform.

Also, an affidavit from Mr. A. B. Bruce, the foreman of the claimant for several days at The Lane Company, gave an opinion by Mr. Bruce that the claimant could not perform any work in his department, "including inspection." However, this information does not vitiate the testimony of the vocational expert that the claimant does retain, in his judgment, physical ability to engage in substantial gainful activity, especially in the aforementioned jobs.

■ Furthermore, subsequent to the hearing, letters were received from the employment offices of General Electric in Lynchburg and The Lane Company of Altavista rejecting plaintiff's applications for a job at each respective company. However, section 223(d) (2) of the Social Security Act requires that the claimant with a disability be unable to obtain any substantial gainful work existing in the national economy, "regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." In this instance, the rejection by two potential employers in the immediate vicinity does not preclude plaintiff's gaining employment somewhere in the national economy, particularly in light of the vocational expert's testimony concerning her ability to work with a handicap and her previous limited work experience.

■ The law provides that an applicant must establish "[an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment," 42 U.S.C.A. § 416(i), 423(d) (1) (A). It is not enough to establish that an impairment exists. It must also be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. Lewis v. Gardner, 396 F.2d 436 (6th Cir. 1968); Gotshaw v. Ribicoff, 307 F.2d 840 (4th Cir. 1962); Starvis v. Finch, 315 F.Supp. 854 (W.D.Pa.1970); DeLoach v. Finch, 311 F.Supp. 903 (W.D.Va.1970); Taylor v. Gardner, 284 F.Supp. 691 (W.D.Va. 1968).

It is settled law that the burden of proof rests upon the plaintiff to establish her entitlement to disability insurance benefits under the Social Security Act, Cyrus v. Celebrezze, 341 F.2d 192 (4th Cir. 1965); Klapatch v. Finch, 297 F.Supp. 976 (M.D.Pa.1969); and it is not the burden of the Secretary to make an initial showing of nondisability. Reyes Robles v. Finch, 409 F.2d 84 (1 Cir. 1969); King v. Gardner, 370 F.2d 652 (6th Cir. 1967); DeLoach v. Finch, 311 F.Supp. 903 (W.D.Va.1970).

■ In order for the plaintiff to recover child's insurance benefits under section 202(d) of the Social Security Act, 42 U.S.C.A. § 402(d), she must establish that she became "disabled" prior to the expiration of her insured status. Domozik v. Cohen, 413 F.2d 5 (3 Cir. 1969); Lewis v. Gardner, 396 F.2d 436 (6th Cir. 1968); Carter v. Celebrezze, 367 F.2d 382 (4th Cir. 1966). The record indicates that plaintiff's sole impairment prior to attaining age 18 in November 1939 was the atrophied condition of her left upper extremity result-

ing in an almost complete loss of use of her left arm. The courts have repeatedly held that the loss of a single limb is not disabling. Wright v. Gardner, 403 F.2d 646 (7th Cir. 1968); Robinson v. Celebrezze, 326 F.2d 840 (5th Cir. 1964); May v. Gardner, 362 F.2d 616 (6th Cir. 1966).

The plaintiff married at an early age and for years was fully occupied as a homemaker and raising four children. She did not seek employment outside the home until 1953. She apparently had no difficulty in being hired and she worked satisfactorily as a drug store fountain clerk until she stopped because she was needed at home. Her subsequent efforts in industrial-type jobs were unsuccessful because the work required the full use of both arms. Other than being prevented from doing work requiring the full use of both arms and hands in lifting, pushing, pulling, or performing manipulative movements, the plaintiff was not handicapped and possessed residual functional capacity to be usefully employed. The vocational expert, who had experience in placing handicapped individuals in employment, testified as to specific jobs that the plaintiff could do and which existed in the economy prior to plaintiff's attaining age 18 as well as at the present time.

■■ Although statements of physicians were given that the plaintiff was unable to hold down a job in industry or tolerate employment as she was a poor employment risk, this is not conclusive of the ultimate fact of "disability," unless supported by substantial evidence. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966); Rodriguez v. Celebrezze, 349 F.2d 494 (1st Cir. 1965); Hall v. Celebrezze, 238 F.Supp. 153 (E.D.Ky.1963), aff'd 340 F.2d 608 (6th Cir. 1965). Furthermore, the hearing examiner was not bound to accept the conclusion of plaintiff's own physician that she was totally disabled without weighing it in balance with other evidence, both medical and vocational. Urgolites v. Finch, 316 F.Supp. 1168 (W.D.Pa.1970).

■ Lay evidence offered by the plaintiff's foreman cannot justify a conclusion that the plaintiff was under a disability at the crucial time (18 years of age) and therefore entitled to benefits sought in the absence from the record of evidence showing an impairment constituting "disability" under the Social Security Act.

■ The test of disability is the inability to work at all, not the inability to find a job. Whiten v. Finch, 437 F.2d 73 (4th Cir. 1971); Brown v. Finch, 429 F.2d 80 (5th Cir. 1970); Woods v. Finch, 428 F.2d 469 (3rd Cir. 1970); Statzer v. Cohen, 297 F.Supp. 874 (W. D.Va.1969).

■ Plaintiff has not adequately proven her case that she was under a "disability" before age 18 and continuing until the death of her father. Her employment subsequent to age 18 demonstrate her ability to engage in gainful employment. Furthermore, the testimony of the vocational expert with experience in these matters indicates that she could work before reaching age 18 and can now engage in certain types of employment.

For the foregoing reasons, it is the conclusion of this court that the Secretary's decision denying the plaintiff's claim for Social Security child's disability insurance benefits is supported by more than substantial evidence. Plaintiff has neither proven her disability by medically acceptable clinical or laboratory diagnostic techniques nor has she shown her inability to engage in any kind of substantial gainful employment in the national economy.

Accordingly, summary judgment should be and hereby is granted to the defendant.