Lois J. EPPERLY, Plaintiff,

v.

Elliott L. RICHARDSON, Secretary of Health, Education & Welfare, Defendant.

Civ. A. No. 72-C-52-R.

United States District Court,
W. D. Virginia,
Roanoke Division.

Aug. 31, 1972.

S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education, and Welfare.

The decision rendered by the hearing examiner on July 22, 1971, denying the plaintiff her claimed disability benefits, became the final decision of the Secretary when the Appeals Council denied the plaintiff's request for review on February 4, 1972. Plaintiff's claim for disability insurance benefits has been rejected at all levels of the administrative process and she now petitions the district court for a review of the Secretary's decision.

The court must consider whether the Secretary's final decision denying the plaintiff her requested disability insurance benefits is supported by substantial evidence. Also to be considered by the court is whether sufficient new evidence exists for a remand of this case to the Secretary for further proceedings.

The standard by which the plaintiff's claim has been measured is that contained in Section 223 of the Social Security Act, 42 U.S.C.A. § 423. Section 223(d)(1)(A) now provides that the term "disability" shall be defined as an

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to * * * last for a continuous period of not less than 12 months.

Section 223(d)(3) further develops the standard of proof required by providing:

> For the purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

Section 223(d)(2) defines the degree of severity which is required for the claimant to be considered under a "disability" for the purposes of the Act by providing that

> An individual * * * shall be determined to be under a disability only

Dale Myers, Roanoke, Va., for plaintiff.

Paul R. Thomson, Jr., Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION AND JUDGMENT

DALTON, District Judge.

This action is brought under Section 205(g) of the Social Security Act, 42 U.

if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experiences, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Section 216(i)(2)(D) of the Social Security Act, 42 U.S.C.A. § 416(i)(2)(D) sets the time for final disability payments by providing that

A period of disability shall end with the close of whichever of the following months is the earlier; (i) the month preceding the month in which the individual attains age 65, or (ii) the second month following the month in which the disability ceases.

The plaintiff was born in Salem, Virginia, on August 15, 1928, and completed one year of high school before becoming employed. In 1947 she married and thereafter had four children. All but one of her children are now married and the unmarried son, age 20, lives at home with his father and mother in Roanoke, Virginia. When plaintiff left school, she accepted employment with a packing company where she made frankfurters by hand. Then she went to work in a hosiery mill inspecting hosiery for flaws. Thereafter, claimant worked behind the soda and food counter in a pharmacy, in S. H. Kress as a clerk at various counters, and in a glove factory pinning leather tips on glove fingers. After her marriage and the births of her four children, plaintiff worked in a bakery for nearly 10 years. During this period of employment, she operated the cake mixing machine, ran the cutting machine preparing cakes for filling, and finally, iced cakes. Thereafter, plaintiff worked for a plastic package manufacturer performing injection moulding in producing boxes and blow moulding in producing plastic bottles. Plaintiff moved to a production job with a manufacturer producing knitwear, where she kept the machines supplied with needed raw material and boxed the finished product. Most recently, plaintiff was employed by a manufacturer of ball bearings where, although her title was inspector, her duties involved machine production. In performing her duties, plaintiff used a scoop to feed metal ball bearings into the machine and to remove the finished product. She also rolled the unfinished bearings to the machine and the finished ones away in a "truck," consisting of a small wooden bin. This employment ended in June, 1968, when, after plaintiff was hospitalized, her supervisor called and advised her not to return to work as she would hold up production. However, he informed her that she would be given a good reference, but she did not thereafter seek employment.

Plaintiff asserts that she became disabled in June, 1967, when she went to her doctor complaining of continuous pain in her left hand for which she was given a series of five cortisone injections and was told she had the early stages of rheumatoid arthritis. Plaintiff stated at the hearing that she continued working until June, 1968, but that on one occasion while she was working her back "gave away" and she fell and was hospitalized, underwent a myelogram and was told she had a ruptured disc. On another occasion she had an operation on her left arm. Since 1968, plaintiff stated she had been in a hospital eleven or twelve times, including a period in the Roanoke Rehabilitation facility for therapy, in the Community Hospital for traction and a body cast, and at Duke and the University of Virginia hospitals for tests. In addition, plaintiff's left knee cap is a plastic one placed there some ten years previously.

With respect to the claimed disability, plaintiff testified that her legs collapse "first one then the other," that she is in constant pain, that she continuously feels she is freezing, that she cannot grip with her hands and that she frequently falls over and cannot walk.

Because of the symptom of instability in walking, plaintiff sometimes must be assisted to and from the bathroom and she is seldom left alone. The son is at home until he leaves for work, the married daughter comes almost every day to perform the housework, and plaintiff's husband works only three or four days a week.

Plaintiff claims to be unable to do housework and she stays in bed most of the time with a heating pad under her and an electric blanket over her. She claims her weight is 119 pounds but at one time reached 141 pounds when she accumulated water in her tissues.

Plaintiff stated that she took pain pills and a muscle relaxant several times a day, and that if she does not take her medication, she goes "haywire," experiences stomach sickness, and falls down.

She testified that she has no hobbies or recreation and receives no friends. She said "I am so sick that I just lay there and if they will leave me alone in quietness that's all the recreation I want."

Plaintiff's husband, William Epperly, claimed that his wife was unable to do household chores because she could not grip anything. He also stated that she was able to be up in the daytime, cook once in a while, wash some dishes, and make beds, but sometimes she shakes all over, her legs collapse and she falls. He also testified that he had to carry her to and from the bathroom. He stated that the falls occurred mostly during rainy weather or when she had been standing too long.

Mrs. Mary Sweeny testified that she did domestic work for plaintiff but that she had no knowledge concerning Mrs. Epperly's impairment.

Plaintiff's daughter, Peggy Waldron, also testified that she did household cleaning almost daily for her mother. She stated that her mother remained in bed and had to be carried by her father to the bathroom after certain medication. When no medicine was available, plaintiff complained of pain and her legs collapsed.

The plaintiff was examined by Dr. Alfred L. Wolfe, a graduate of Boston University School of Medicine and engaged in the practice of internal medicine at Roanoke Memorial Hospital, on January 23, 1970, when she was admitted because of low back pain radiating into the left leg. Plaintiff had stepped into a hole in her back yard and had fallen injuring her left leg and back. General medical history indicated early rheumatoid arthritis, two instances of surgery on the left knee for cartilage by Dr. Richard Fisher and disc surgery by Dr. William Tice, a neurological specialist. The general systems review by Dr. Wolfe was reported as "essentially negative." According to Dr. Wolfe's report plaintiff was seen by Dr. Phillip Trout in Roanoke Memorial Hospital and was given physiotherapy and medication for a severe sprain and was discharged home on February 26, 1970. Claimant continued to complain of pain in the low back and left leg.

Because of continuing complaints of the same nature, plaintiff was admitted to the University of Virginia Hospital on June 3, 1970, for tests and further evaluation. The hospital report shows that plaintiff had lumbar disc surgery by Dr. Tice in January, 1969, and she had fallen five times after her fall in January, 1970, because her knees "buckled up." At that time plaintiff was taking Indocin for arthritis and Valium and Allopurinel for her back pain. The report of physical examination mentions: "General appearance showed a slender, well-developed, well-nourished, . . . female with obvious psychological overlay." The detailed specific physical examination was reported as negative except for marked tenderness at L–5 with

straight leg raising limited at 45 degrees on the left. Neurological examination revealed cranial nerves intact and no focal motor weakness. Reflexes were symmetrical and coordination tests were normal, but there was a subjective loss of position sense bilaterally. Although the white blood count was slightly low, the latex flocculation test for arthritis was negative. The myelogram was "not diagnostic" and in the final diagnosis, the condition was listed merely as suspect. Claimant requested a discharge, preferring an exploratory laminectomy to be done at Roanoke.

Thereafter, Assistant Professor Dr. David A. Horwitz wrote plaintiff's treating physician, Dr. Wolfe, on June 10, 1970, that he had seen plaintiff after her discharge from the hospital and that an examination revealed no evidence of active synovitis and the latex test rheumatic factor was negative. He stated that she may have a mild seronegative rheumatoid arthritis which responds well to salicylates and tranquilizers for similar symptoms "in high-strung women."

In July, 1970, Dr. Wolfe referred plaintiff to a neurological surgeon, Dr. John D. Varner. After examination, on July 14, 1970, Dr. Varner reported ". . . Initially I am not impressed that Mrs. Epperly has any organic disease causing the falling. She has a hysterical type of sensory examination, and it is not conceivable to me that a ruptured disc would make the legs suddenly give way and then the strength return to normal. I suggested that she try some exercise but she felt certain this would not benefit her." On August 3, 1970, Dr. Varner stated that X-rays showed a defect at L–4, but that he would not do exploratory surgery on her.

Dr. Wolfe then referred plaintiff to Duke University Medical Center because of continued leg weakness, back pain and falling. Dr. Guy L. Odom, a neurosurgeon, examined plaintiff at the Surgical Private Diagnostic Clinic on September 3, 1970, and found cranial nerves intact and no definite motor weakness and no pathological reflexes. A myelogram failed to reveal any evidence of nerve root compression. Dr. Odom concluded that claimant's symptons could not be accounted for on the basis of nerve root involvement and that she was not having sufficient difficulty to justify admission to the hospital for further studies or a repeat myelogram. He suggested wearing a lumbosacral support, avoiding heavy lifting and sleeping on a firm mattress with a fracture board. He also stated that plaintiff "has a large functional overlay."

On September 25, 1970, plaintiff was admitted to Community Hospital of Roanoke Valley by Dr. Richard Fisher for cronic low back pain and anxiety. She was placed in traction, and displayed a "low threshold" for pain. A lumbosacral cast was applied with instructions to wear it for six to eight weeks. This was removed by Dr. Wolfe prior to the required time and Dr. Fisher removed himself from her case.

In October, 1970, Dr. Wolfe recapitulated the various examinations arranged for plaintiff and commented that "throughout all of this there was a finding of some possible rheumatoid arthritis, and the patient has been treated with Indocin . . ." In December, 1970, Dr. Wolfe indicated that he had been trying to find someone at the various hospitals and among various physicians who could account for her various complaints. He reported that the only diagnosis he had been able to come up with was that of sprain in the back and legs. He concluded with:

"It would appear that this patient is disabled from being on her legs for any length of time during the 24-hour period and is unable to do heavy work or even work that calls for sitting a long time or being on her feet a long time."

In March, 1971, Dr. Wolfe reported plaintiff had been in Roanoke Memorial Rehabilitation Hospital from January 9 to February 6, 1971, reportedly with a discharge diagnosis of "degenerative

disc disease, L–5 and S–1 as per X-ray, and neuritis of the legs." However, she was seen by Dr. Nelson Richards, who stated, "I do not see any radiculopathy of a herniated disc. Much tension clouds everything . . ." Dr. Wolfe concluded, "I have no opinion at all as to the amount of disability this patient has."

After the hearing, plaintiff's attorney submitted a copy of a psychiatric consultation report requested by Dr. McCausland of Roanoke Memorial Hospital and performed August 6 and 11, 1969, by Dr. Frank A. Strickler. He reported that the Cornell Personality Test revealed a "reasonably stable individual." He observed, "this patient is quite a problem, but no obvious psychological problem shows up." He concluded, "She will never respond to psychotherapy program." His impression was "Pain unexplainable. Unhealthy attitude." The recommended treatment was "stop seeing doctors."

Subsequent to the hearing and prior to the appeal, plaintiff was operated on by Dr. Ward W. Stevens, a neurosurgeon, on September 15, 1971, in the Community Hospital, at which time a total laminectomy was done of L–4 and L–5. A small seroma of the wound developed, as reported in the discharge summary of plaintiff from the hospital, dated September 25, 1971, but this healed and plaintiff was discharged to convalesce at home.

In response to a letter from plaintiff's attorney, requesting information on her condition, Dr. Stephens stated in a letter dated December 21, 1971, that plaintiff "has been disabled due to her back condition, however, to say that she is totally disabled would be inconsistent with proper use of this term as connoted by usual medical terminology."

Plaintiff's attorney also obtained a statement, dated October 30, 1971, from Dr. Thomas E. Donnelly, internist, who stated:

"In my professional opinion Mrs. Lois Jane Epperly was and still is disabled and has been unable to work since the first time I examined her on July 7, 1971. I have no way of knowing, personally, what her medical condition was or the severity of her disability prior to July 7, 1971."

This information was made a part of the record for the Appeals Council, however, plaintiff's attorney requested a hearing in which plaintiff's doctors could be subpoenaed to testify whether plaintiff had been disabled so that she could not hold remunerative employment over several years.

The Appeals Circuit denied this request for a review on February 4, 1972.

This court is of the opinion that evidence of another operation subsequent to the hearing, followed by a convalescent period, and the statement by one doctor that plaintiff has been unable to work since July 7, 1971, is sufficient "good cause" to warrant a remand of the case, pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), which states, in part:

"The court . . . may, at any time, on good cause shown, order additional evidence to be taken before the Secretary, and the Secretary shall, after the case is remanded, and after hearing such additional evidence, if so ordered, modify or affirm his findings of fact or its decision, or both, and shall file with the court any additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based."

"Good cause" has been held to be a relative and highly abstract term, and courts have not been required to give such a technical and cogent showing of good cause as would justify the vacation of a judgment or the granting of a new trial, where no party would be prejudiced by the acceptance of additional evidence and the evidence offered bears directly and substantially on the matter in dispute. Blanscet v. Ribicoff, 201 F. Supp. 257 (W.D.Ark.1962); Sage v.

Celebrezze, 246 F.Supp. 285 (W.D.Va. 1965).

In this instance, plaintiff's illness continued throughout the hearing and after her claim was denied. While the court does not dispute the hearing examiner's conclusion that plaintiff failed to establish her disability from June, 1967, or even June, 1968, the evidence does indicate that plaintiff may have become disabled in 1970 or after her more recent operation in 1971. None of the physicians treating Mrs. Epperly was subpoenaed at the hearing, and with the exception of Dr. Donnelly, none gave a completely satisfactory answer as to plaintiff's disability or lack of it.

■■ It is settled law that the burden of proof rests upon the plaintiff to establish her entitlement to disability insurance benefits under the Social Security Act. Cyrus v. Celebrezze, 341 F.2d 192 (4th Cir. 1965); Bias v. Finch, CCH UIR Fed. ¶16432 (S.D.W.Va. 1971); Klapatch v. Finch, 297 F.Supp. 976 (M.D.Pa.1969). It is not the burden of the Secretary to make an initial showing of nondisability. Reyes Robles v. Finch, 409 F.2d 84 (1st Cir. 1969); King v. Gardner, 370 F.2d 652 (6th Cir. 1967); DeLoach v. Finch, 311 F.Supp. 903 (W.D.Va.1970).

■ The law provides that an applicant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U. S.C.A. §§ 416(i), 423(d)(1)(A). Section 223(d)(3) defines a medically determinable physical or mental impairment as an impairment that results from an anatomical, physiological or psychological abnormality which is demonstrable by medically acceptable clinical and laboratory diagnostic techniques. Walters v. Gardner, 397 F.2d 89 (6th Cir. 1968). It is not enough to establish that an impairment exists. It must also be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. Lewis v. Gardner, 396 F.2d 436 (6th Cir.

1968); Gotshaw v. Ribicoff, 307 F.2d 840 (4th Cir. 1962); Starvis v. Finch, 315 F.Supp. 854 (W.D.Pa.1970); DeLoach v. Finch, 311 F.Supp. 903 (W.D. Va.1970); Taylor v. Gardner, 284 F. Supp. 691 (W.D.Va.1968).

Because additional evidence regarding plaintiff's ability to work arose subsequent to the hearing and the doctors treating her never appeared at the hearing to give adequate testimony regarding her disability or lack of it, this court remands this case to the Secretary for further proceedings on the evidence, not inconsistent with this opinion.