Edward L. BLANSCET, Plaintiff,

v.

Abraham RIBICOFF, Secretary of Health,
Education and Welfare, Defendant.

Civ. A. No. 1598.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Jan. 19, 1962.

258

Jack Yates, Ozark, Ark., for plaintiff.

Charles M. Conway, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Ft. Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

This is an action by the plaintiff, Edward L. Blanscet, to review a final decision of the defendant Secretary, denying the plaintiff's application for a period of disability and disability benefits, as authorized by the Social Security Act, as amended, 42 U.S.C.A. §§ 416(i), 423. This court has jurisdiction of the action pursuant to Sec. 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g). The applicable section of the statute provides:

"* * * The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *."

On February 4, 1960, plaintiff filed his application to establish a period of disability and his application for receipt of disability insurance benefits. The applications were subsequently denied, and the plaintiff thereafter requested a reconsideration of said denial. Upon reconsideration, the Bureau of Old-Age and Survivors Insurance affirmed the denial of the applications, and the plaintiff thereafter requested a hearing before a hearing examiner. The hearing was conducted on January 17, 1961, and on January 27, 1961, the hearing examiner filed his decision denying the plaintiff's claim. Thereafter the plaintiff requested the Appeals Council to review the hearing examiner's decision, and on April 10, 1961, the Appeals Council denied plaintiff's request for review. The decision of the hearing examiner, therefore, became the final decision of the defendant Secretary.

Plaintiff filed the instant action in this court on June 7, 1961, and in due time the defendant filed his answer. The case is now before the court on cross motions for summary judgment. Briefs have been received from each side in support of their respective contentions and have been considered by the court.

The pertinent facts in this case are not in dispute. The plaintiff was born August 5, 1905, at Ozark, Arkansas. His formal education consisted of completion of the eighth grade, and since leaving school he first worked on his parents' farm until he was 21 years old, and then went to work as a coal miner. During his work life he has been employed as a coal miner by various companies, and the two years immediately prior to his claimed date of disability, he worked in his own coal mine, and besides working as a miner, he has also farmed. While working in the mines, he worked underground. He was last employed in working his own coal mine in January 1959. This employment was terminated when he became unable to perform the work due to his physical condition, consisting of a pain in his low back radiating down his left leg. He first experienced trouble with this condition in 1940, and he denies any injury. Since that date the pain in his back and left leg reoccurred at intervals lasting four to six weeks. However, the back and leg pains, which afflicted him in January 1959, have not left him as the prior attacks had done. He complains that he is in pain all of the time, and the pain is increased whenever he uses his left leg in walking, standing or lifting.

Plaintiff lives on a small farm near Ozark, Arkansas, with his wife. His

wife cultivates the garden and takes care of five head of cattle on the farm when they are not on pasture. He helps in the garden and in the care of the cattle when he is able. He is able to drive a standard transmission truck and a farm tractor, although he states that it bothers him. He admits that he has done some work for his brother on his brother's farm for about three weeks in the summer of 1959, by driving the tractor during intervals when his pain was less severe but had to give that up when the pain increased.

The earnings record reflects that the plaintiff last met the earnings requirements under the provisions of the 1958 amendments to the Social Security Act through the calendar quarter ending September 1959.

A medical report, dated February 6, 1960, and submitted by Dr. T. M. King, a chiropractor, indicates that the plaintiff's present illness began in 1945, and that plaintiff became unable to work in December of 1958; that the subjective symptoms were pain and distress across the lumbosacral region, radiating into the left hip with pain and distress in the left leg from the hip to the knee; that the bones in the leg ached and muscles had lost normal sensation leaving a paralyzed feeling. Objective findings showed vertebral subluxation of lower lumbar vertebrae. There appeared to be a slight enlargement of the bone structure of the left hip, and at times there was considerable limitation of movement of the left leg raise. Plaintiff was given a total of 22 chiropractic treatments, the first treatment being in November of 1959 and the last on February 5, 1960. The report indicates that the plaintiff's response to the treatments was not very good. The report further indicates that the plaintiff is making no progress; that he is not able to work and is not to be on his feet very long at a time without suffering from severe aches and pains. On February 6, 1961, Dr. King certified that he made an examination of the plaintiff on the same date and found no noticeable change in his condition since the date of the last report.

The medical report of February 9, 1960, was submitted by Dr. David Gibbons of Ozark, Arkansas, which shows that the plaintiff's present illness or injury occurred about 15 years ago. Subjective symptoms again were shown to be pain in the left leg and partial paralysis of the left leg. Objective findings showed the left leg to be slightly smaller than the right leg; reflexes were sluggish and sensory changes were evident over the leg. The diagnosis made was sciatica. The treatment was corticosteroid therapy, but there was poor response. The report indicates that the specific restrictions on the plaintiff's activities are walking and lifting.

A medical report, dated June 25, 1960, submitted by Dr. Charles M. Smith, of Paris, Arkansas, shows substantially the same information previously set forth with a further diagnosis of a herniated disc.

On September 13, 1960, the plaintiff was examined by Dr. William I. Porter of Little Rock, Arkansas, a neurosurgeon. This special examination revealed that the plaintiff's blood pressure was 130/60, and the heart tones were normal. The neurological examination pertaining to the cranial nerves and to both upper extremities was negative and noncontributory. The plaintiff was observed to walk with a limp, favoring the left leg. There was no actual muscle weakness found in either lower extremity. The vertebral column was straight without any list or muscle spasm. He was able to bend his back only an estimated 50 percent of the normal range. Both patellar reflexes were equally active. The left Achilles' reflex was absent, while the right was normally active. There was no actual loss or diminished area of sensory disturbance in either leg. There was no measurable atrophy in either thigh or calf muscle groups. There was no sign of lumbar nerve root compression on Lasegue's straight-leg-raise test. The diagnosis was that the plaintiff is

suffering from a so-called chronic recurrent disc protrusion, probably at the lumbosacral interspace on the left side, and there are confirmatory neurological signs to indicate this. The report further indicates that a spinal myelogram would clarify the diagnosis, and, if a sizable disc defect is demonstrated on the myelogram, then in all probability the plaintiff would benefit from surgery. This report does not indicate in what manner the plaintiff's activities would be restricted if the myelogram should demonstrate said sizable disc defect, but at the time of the examination, the plaintiff's activities were restricted to such an extent as to prevent him from carrying out extremely heavy work or work that would cause heavy strain to the lower back.

 The burden of proof is upon the plaintiff. Not only are the findings of fact made by the hearing examiner, if supported by substantial evidence, conclusive, but a majority of courts also extend the finality of the hearing examiner's findings to inferences and conclusions which he draws from the evidence if there is substantial basis for the conclusion. The hearing examiner's conclusions of law, however, are not binding upon the court, although they are entitled to great weight. In reviewing the decision of the hearing examiner, this court must not abdicate its conventional function. Morris v. Ribicoff, 194 F.Supp. 841 (W.D.Ark.1961); Harmon v. Ribicoff, 192 F.Supp. 743 (W.D.Ark.1961). The court's function in a review of this nature was succinctly summarized in Lewis v. Flemming, 176 F.Supp. 872, at page 874 (E.D.Ark.1959), when the court said:

"In an action of this kind, judicial review should go no further than to determine whether the findings made by the administrative fact finder are supported by substantial evidence and whether applicable principles of law have been correctly applied to the facts. Arbitrary or capricious action must be set aside, and, of course, a finding or conclusion based upon an erroneous view of the law cannot be sustained."

 The meaning of the term "substantial evidence" and the application of that term by the court is, of course, of paramount importance in a determination of this case. The meaning and application of the "substantial evidence" test in Social Security cases have been subject to discussion in several recent cases. In Aaron v. Fleming, 168 F.Supp. 291 (N.D.Ala.1958), Circuit Judge Rives, sitting by assignment, adopted Chief Justice Hughes' definition of substantial evidence, as follows:

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

In Corn v. Flemming, 184 F.Supp. 490 (S.D.Fla.1960), Judge Whitehurst adopted Judge Rives' definition of substantial evidence in the Aaron case, supra, and added at page 493:

" * * * The reliance of the Referee upon isolated remarks in two or three of the many reports before him is not enough to meet the test." [of substantial evidence.]

In Harrison v. Flemming, D.C.E.D. Ark., Docket No. LR–60–C–101, no opinion for publication, Judge Henley said:

"An administrative finding that a claimant for disability benefits or for a period of disability under the Social Security Act has failed to establish his claim is a negative one. Such a finding is supported by substantial evidence if the state of the record is such that if the case were tried before a jury the Court would be required to deny a motion for a directed verdict made by the claimant upon the completion of all of the proof. Cf. Wray v. Flemming (D.C.Ark., 181 F.Supp. 783) citing 4 Davis, Treatise on Administrative Law, Sec. 29.02."

See also: Morris v. Ribicoff, supra; and Harmon v. Ribicoff, supra.

The hearing examiner summarized his findings with the following:

"The claimant with whom we are concerned in this decision has but one complaint contributing to his alleged inability to engage in some type of substantial gainful activity; that is the condition of his lower back with pain radiating into the left lower extremity. This condition has been diagnosed as sciatica. The claimant testified that the treatments he takes or adjustments by his chiropractor help relieve this condition temporarily.

"While the claimant, because of his age and overall physical condition, could not be expected to engage in work of a hard strenuous nature or even work in his customary occupation of a coal miner, it is not established that he is or has been continuously unable to engage in some type of substantial gainful activity commensurate with his overall ability to work. The earnings requirements, as stated previously, expired with the calendar quarter ending September of 1959. There is nothing contained in the record to substantiate a determination that the claimant became unable to engage in any type of substantial activity prior to this date.

"The hearing examiner, after considering the record and testimony in its entirety, finds that the claimant has failed to establish that he is or has been continuously under an impairment or combination of impairments of such severity as would have precluded him from engaging in some type of substantial gainful activity from the alleged date of onset of disability up to the time the earnings requirements for disability purposes expired."

Disability is defined in 42 U.S.C.A. § 423(c) (2), as meaning:

" * * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or to be of long-continued and indefinite duration. An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required."

The Social Security Administration in 20 C.F.R., Sec. 404.1502(c), defines disability in part, as follows:

"Where an individual with a marginal education and long work experience (e. g., 35 to 40 years or more) limited to the performance of arduous unskilled physical labor is not working and is no longer able to perform such labor because of a significant impairment or impairments and, considering his age, education and vocational background is unable to engage in lighter work, such individual may be found to be under a disability. On the other hand, a different conclusion may be reached where it is found that such individual is working or has worked despite his impairment or impairments (except where such work is sporadic or is medically contra-indicated) depending upon all the facts in the case. In addition, an individual who was doing heavy physical work at the time he suffered such impairment might not be considered unable to engage in any substantial gainful activity if the evidence shows that he has the training or past work experience which qualifies him for substantial gainful work in another occupation consistent with his impairment, either on a full-time or a reasonably regular part-time basis."

■ The fact that there is such a subjective symptom as pain does not mean that it ranks as a lesser type of disability. Lewis v. Flemming, 176 F.Supp. 872 (E.D.Ark.1959). In this case, Judge Henley stated as follows, on page 876:

"There is nothing in the statute or the legislative history which indicates a Congressional intent to exclude disability caused by pain, as

contrasted to other types of disability, such as disability resulting from loss of limbs or sight or from mechanical disfunction of the limbs, joints, or other organs of the body. As a matter of fact, common experience and observation teach that in many cases of disability pain in one form or another is the chief and immediate disabling agent. An individual's body may be mechanically capable of use and function, but the pain resulting therefrom may be so great as to preclude them. Indeed, the nervous system in an effort to avoid agonizing pain may in effect impose immobility and inactivity upon the person affected; and in such a case the disability is no less real than it would be if the patient had lost the mechanical use of his body."

The only issue before the court upon the record is whether there is substantial evidence in the record to support the decision of the Secretary that plaintiff failed to establish that he was entitled to a disability freeze or to monthly disability insurance benefits as of September 30, 1959, when his insured status for disability purposes expired.

The hearing examiner found that the plaintiff's physical condition was such that it would limit his ability to engage in work of a hard strenuous nature or even work as in his customary occupation of a coal miner. However, he stated that it was not such as would continuously preclude the plaintiff from engaging in some type of substantial gainful activity commensurate with his over-all ability to work from the alleged date of onset of disability up to the time the earnings requirements for disability purposes expired. The hearing examiner apparently failed to consider the manner in which the plaintiff's impairments affect him as an individual in his quest to secure and perform work which could be classified as substantial gainful activity. In Dunn v. Folsom, 166 F.Supp. 44, at page 48 (W.D.Ark.1958), this court said:

" * * * the act is concerned not with a standard man of ordinary

and customary abilities, but with the particular person who may claim its benefits and the effect of the impairment upon that person, with whatever abilities or inabilities he has. Thus plaintiff's impairments would not prevent him from teaching courses in law, but the provisions of the act would be utterly futile if 'any substantial gainful activity' means activity utterly beyond the capacity of the particular person involved. 'Any substantial gainful activity' is such activity for which the particular claimant is reasonably qualified by education, training, or skill. Compare cases relating to 'total disability' under War Risk and National Service Life Insurance. * * * Thus, if a medically determinable physical impairment exists, the court should consider whether such impairment prevents the particular plaintiff from engaging in any substantial gainful activity for which he is qualified, and to that end may consider his education, training, and experience, as well as the nature and extent of the impairment itself."

In this connection the recent case of Ellerman v. Flemming, 188 F.Supp. 521 (W.D.Mo.1960), should also be noted. In the Ellerman case, Chief Judge Ridge said at page 527:

"Under the Social Security Act, unlike some other statutes, it is not the burden of the claimant to introduce evidence which negatives every imaginable job open to men with his impairment, and of his age, experience and education. It is quite enough if he offers evidence of what he has done, of his inability to do that kind of work any longer, and, of his lack of particular experience for any other type of job. If there are other kinds of work which are available and for which the claimant is suited, it is the defendant's burden to adduce some evidence from which a finding can be made that he can do some type of work; actually, not

apparently. Parfenuk v. Flemming, D.C.Mass.1960, 182 F.Supp. 532. Here, the Referee has made no such finding, whatsoever, based on evidence."

The requirement that the court must look to the plaintiff's education, training, and mental capabilities was summarized in the recent case of Randall v. Flemming, 192 F.Supp. 111, at page 123 (W.D. Mich.1961), in the following words:

"To summarize, the courts have generally agreed that the test of a claimant's disability or inability to engage in any substantial gainful activity is a subjective one, that is, what is reasonably possible in the light of the plaintiff's physical and mental capacities and his education, training, and experience. It is not necessary that the plaintiff establish the complete absence of any opportunity for substantial gainful employment; he need only establish that he has become disabled from employment in any work or vocation in which he could profitably seek employment in the light of his physical and mental capacities and his education, training, and experience. Furthermore, it is clear that a plaintiff need not be totally helpless or bedridden in order to be considered disabled under the Social Security Act."

The physical condition of the plaintiff was discussed at length at the hearing before the examiner. The examiner also discussed it and the related medical reports in detail in his decision. However, the examiner apparently did not consider the restrictions placed on the plaintiff's activities except in the report of the neurosurgeon, Dr. Porter. Those restrictions have been quoted above and need not be set out at this point. The defendant has emphasized the report of Dr. Porter for the reason that it restricted the plaintiff's activities only in the sense of carrying out extremely heavy work or heavy strain to the lower back. But, if his restriction is read in context with the diagnosis, it is uncertain whether Dr. Porter is saying that this restriction would apply if a disc defect is not demonstrated on a myelogram, or if such restriction would apply if the plaintiff could correct such defect, if present, by surgery.

The defendant has also argued the point that there is a time lag between the date on which the plaintiff allegedly became disabled and when he went to a doctor for examination and treatment. In this case plaintiff alleged in his complaint that he became disabled in January 1959, and the record reflects that the first doctor contacted by the plaintiff was Dr. King, a chiropractor, who examined and began treatment of the plaintiff in November 1959. The other medical reports introduced as evidence in this case were based on subsequent examinations. While this is a fact to be considered, the court must also look to the nature of the plaintiff's claimed disability itself. As Dr. Porter characterized it in his report, it is a "so-called chronic recurrent disc protrusion." Although we have only the plaintiff's testimony as to the specific date from which he claims to have become too disabled to pursue a substantial gainful activity, yet the hearing examiner was content to base his decision on this testimony and the medical reports, constituting the requisite substantial evidence. Taking the subjective complaints of the plaintiff and the objective findings of the doctors at face value, this court is convinced that the plaintiff's disability existed during the period prior to September 1959.

In the instant case the plaintiff has clearly shown the type of work he has performed in the past. This is the work of a coal miner and as a farmer which, of course, requires strenuous labor. Due to his physical condition the plaintiff has proved that he is no longer able to perform this type work and that fact was recognized by the hearing examiner with particular reference to the coal mining. This leaves the court with the question of whether or not other work, which can be classed as substantial gainful activity is available to the plaintiff in view of his

physical limitations, together with his education, training and experience. Absolutely no evidence was introduced as to this question. As stated by the Court of Appeals for the Second Circuit in the recent case of Kerner v. Flemming, 283 F.2d 916, at page 921:

" * * * the evidence as to employment opportunities was even less. Here is a man, admittedly able to do only light work, and this at a location reachable without undue exertion, and presenting a prospective employer with the unattractive combination of age, heart disease, diabetes and acute worry about himself. No one of these factors might be fatal to employment—indeed, the constellation of them may not be— but the Secretary had nothing save speculation, to warrant a finding that an applicant thus handicapped could in fact obtain susbtantial gainful employment."

It is again recognized by the court that the burden of proof in this action is on the plaintiff and that he has the ultimate burden of persuasion, but, as stated by the Court of Appeals in the Kerner case, supra, at page 922:

"However, it does not follow that the court is bound to sustain a denial of disability benefits where the applicant has raised a serious question and the evidence affords no sufficient basis for the Secretary's negative answer. For the sections relied on by the Government have no greater stature than the broad provisions in § 205(g), 42 U.S.C.A. § 450(g), that the reviewing court 'may, at any time, on good cause shown, order additional evidence to be taken before the Secretary * *' a provision which seems to have been inserted for the very purpose of dealing with such cases. We think that was the appropriate course for the District Judge to have followed here, as Judge Kaufman did in Jacobson v. Folsom, D.C.S.D.N.Y.1957, 158 F.Supp. 281. It should not be hard to provide better medical evidence as to what work plaintiff can and cannot do, and the Secretary's expertise should enable him readily to furnish information as to the employment opportunities (including those in sheltered workshops), or the lack of them, for persons of plaintiff's skills and limitations. We recognize that the Department must process many thousands of disability applications annually and that it is impracticable to treat even the relatively small proportion that go to hearing with the elaboration of the trial of a personal injury case. We do not insist upon anything approaching that; and the time and effort required to make an adequate record are often less than what is needed for an effort, necessarily vain, to distill supportable conclusions from an inadequate one. In sharp contrast to the course adopted with reference to disability determination of the Veterans Administration, 38 U.S.C. § 211(a), Congress has seen fit to subject the Secretary's decisions to judicial scrutiny. Even with the limited scope of review conferred, a court cannot properly sanction a decision in a proceeding of this nature reached with such a lack of evidence to permit a rational determination as here."

In reexamining the plaintiff's ability or disability to pursue any substantial gainful activity other than coal mining and farming, the statement of this court in Dunn v. Folsom, supra, should be taken into consideration. There the court 166 F.Supp. at page 49 said:

"It should also be noted that the word 'substantial' as used in Secs. 416 and 423 does not modify 'gainful', but rather modifies 'activity.' The activity in which the plaintiff must be able to engage must not only be 'gainful' but it must also be 'substantial.' The determinative factor here is not how substantial the gain is, but how substantial the activity in which the plaintiff could

gainfully engage. Measuring this requirement in terms of time and physical and mental effort, it is apparent that this plaintiff, even after the proposed operation, cannot be expected to engage in any substantial activity for which he is qualified, and his disability is therefore, so far as the record reflects, one of 'indefinite duration,' both as of the time of hearing and as of the time of injury."

There is no doubt that this court has good cause for remanding this case for a rehearing under the provisions of 42 U.S.C.A. § 405(g). This standard, which allows the remand of a case, is stated as follows in Wray v. Folsom, 166 F.Supp. 390 (W.D.Ark.1958), beginning at page 394:

" * * * On the other hand, 'good cause' is a relative and highly abstract term, and its meaning must be determined not only by the verbal context of the statute in which the term is employed, but also by the context of the action and procedures involved and the type of case presented. In this respect it should be remembered that while administrative determinations have, as they must, a weighty effect with a reviewing court, and the conclusions of a Referee must be accepted if based upon substantial evidence, the administrative hearing in this type of action is informal and nonadversary, and the determinations of an administrative body should not be given the stringent protection against new evidence and re-evaluation afforded to final judgments of courts of record. If new evidence were to be presented, none of the cumbersome and time-consuming requirements found in jury trials are imposed upon the administrative body. This is particularly so where the evidence sought to be introduced is written. It should also be remembered that the defendant would not be prejudiced if new evidence were to be required. In the administra-

tive hearing, as distinguished from the cause in this court, there are no formal adversaries, and no new preparation by any party will be required. As the court said in Schroeder v. Hobby, 10 Cir., 1955, 222 F.2d 713, at page 715:

" 'The Social Security Act is to be liberally construed as an aid to the achievement of its Congressional purposes and objectives. Narrow technicalities which proscribe or thwart its policies and purposes are not to be adopted.'

"In these circumstances, courts must not require such a technical and cogent showing of good cause as would justify the vacation of a judgment or the granting of a new trial, where no party will be prejudiced by the acceptance of additional evidence and the evidence offered bears directly and substantially on the matter in dispute."

See also Hallard v. Flemming, 167 F. Supp. 205 (W.D.Ark.1958).

The court therefore agrees with the decision reached in Kerner v. Flemming, supra, and finds that the case should be remanded to the defendant Secretary and additional evidence taken as to employment opportunities or the lack of them for persons of plaintiff's skill and limitations within the general area in which he resides.

In the decision of the hearing examiner at page 8 of the transcript of the hearing, he states:

"The earnings requirements, as stated previously expired with the calendar quarter ending September of 1959."

However, the transcript at page 40 indicates that the plaintiff had earnings during the fourth quarter of the calendar year 1959, or during the period from October 1, 1959, through December 31, 1959. Thus, the record apparently discloses a discrepancy in the quarters in which the petitioner had earnings, and the court believes that this question

should be further considered by the examiner.

Therefore, an order is being entered today denying both motions for summary judgment and remanding the case to the Secretary of Health, Education and Welfare for further evidence as to employment opportunities or the lack of them available to a person of plaintiff's skills and limitations in the general area in which he resides, together with any other evidence the Secretary may be entitled to receive in accordance with this opinion, including the explanation or clarification of the alleged discrepancy above mentioned.