**Julia J. DEAN, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.**

**No. 77-2030.**

United States District Court, W. D. Arkansas, Fort Smith Division.

Nov. 2, 1977.

Westmoreland & Westmoreland, Fort Smith, Ark., for plaintiff.

Robert E. Johnson, U. S. Atty., J. Michael Fitzhugh, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

OPINION

JOHN E. MILLER, Senior District Judge.

On July 22, 1975, plaintiff, Julia J. Dean, filed application for disability insurance benefits and alleged that she became unable to work on June 28, 1975 because of disability. The disability was listed in her application as arthritis. On October 14, 1975, the Bureau of Disability Insurance, Division of

Initial Claims, advised plaintiff that it had decided that she was not entitled to disability insurance benefits because she did not meet the disability requirement of the law. On October 21, 1975, plaintiff requested reconsideration of her application and on December 8, 1975, she was advised that the previous determination denying her claim was proper under the law.

On February 18, 1976, plaintiff requested a hearing on the ground that the decision is contrary to and is not supported by evidence. A hearing before the Administrative Law Judge was granted and was conducted on June 24, 1976. The proceedings at the hearing are incorporated in the transcript at pages 24 through 50, inclusive.

On August 30, 1976, the Administrative Law Judge held that plaintiff has failed to establish the existence of a disability as that term is defined in Sections 216(i) and 223 respectively of the Social Security Act, as amended. And that she is not entitled to the establishment of a period of disability or disability insurance benefits.

The plaintiff requested a review of the hearing decision and on February 22, 1977 the Appeals Council advised that it had decided that the decision of the hearing examiner is correct and said decision stands as a final decision of the Secretary.

On March 8, 1977, the Chief Judge of this court entered an order granting plaintiff leave to proceed in Forma Pauperis without the prepayment of fees or costs or the giving of security. On the same date, the plaintiff filed her complaint for Special Judicial Review of Administration determination and for Remand of this case to the Secretary of Health, Education and Welfare for further action by the Secretary, in which she alleged that the court has jurisdiction under Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)) and Section 422.210 of the Social Security Administration Regulations No. 22 (20 C.F.R. 422.210).

Plaintiff alleged her various grounds for relief and in paragraph IX stated that she contemplated filing a motion to remand and requested permission to file new and material documentary evidence in support thereof.

The defendant was granted until July 8, 1977 to file answer to the complaint. The answer was filed July 6, 1977 in which it prayed for the entry of judgment dismissing the complaint.

On July 18, 1977, the court extended the time of plaintiff to file motion to remand and brief in support thereof to September 18, 1977. The motion was filed on September 19, 1977. Attached to the motion is a medical report dated September 8, 1977 of Dr. Earl M. Woodson, M.D., 206 Beard Ave., Woodson Clinic, Poteau, Oklahoma, which the plaintiff alleged constituted new and material evidence showing "good cause", that said evidence was not before the Administrative Law Judge and was not considered by the defendant.

Further reference to the report has been made and set forth herein for consideration by the court.

In the hearing before the Administrative Law Judge, plaintiff testified that in addition to her home work, she had served as nurse's aid, motel maid, packed bottles and chickens and worked in the fields. She quit work on June 28, 1975 because of her disabilities, while working in Motel 6 as a maid. Prior to that date, she had undergone apparently her first surgery on March 17, 1974. She testified to various complaints she had from the date she quit work. She persistently contended and testified that her various ailments resulted in her disability. She saw many doctors over a period of years from 1970 to the present time. She was inarticulate and unable to clearly and definitely describe her various ailments. The ailments are fully described in the reports of various doctors which the court has examined in considering whether "good cause" exists for remanding the case to the Secretary.

At the hearing, exhibits one through sixteen were introduced on behalf of defendant. Exhibit No. 7 introduced by plaintiff, lists the names of medicines or at least some of them that had been prescribed to

her by the various doctors. Also, the various types of work done by her were shown.

Exhibit No. 13 is a report dated October 3, 1975 of Dr. Cohen of Walnut Creek, California, in which he diagnosed her physical condition as:

"1. Exogenous obesity.
2. S/p intestinal bypass surgery.
3. S/p excision thyroid nodule (clinically euthyroid).
4. No definitive diagnosis of arthritis."

Exhibit No. 14 is a letter dated November 21, 1975 submitted by Surgical Associates, P.A., Harold H. Mings, M.D., in which it is stated:

"The patient does have complaints of multiple arthritic type pains, involving the knees, ankles, hips, wrists and left hand. She states that these joints are so painful that she is unable to work at a common labor type job. Apparently this is the only job this lady is qualified to do. She was seen in consultation by Dr. McMinimy, an Internist, who felt that she might be having some symptoms of gout and placed her on Xyloprim, 100 mgs., three times a day. We have not seen her in the clinic since 11–7–75 and do not know how she is responding.

"It would be our opinion, however, that if she has not improved that she would be unable to carry out public employment."

Exhibit No. 15 is a report by Dr. D. J. McMinimy, M.D., of Holt-Krock Clinic, in which he refers to certain tests that were made and relative thereto states:

"Despite these negative tests, it was suspected that this patient might have gout by in view of the type of pain that she had. She was started on medication for this, including Xyloprim and some Butaxolidin Alka. She was seen again on November 7, 1975. At that time she was still having quite a bit of pain and it was actually at this time that she was placed on medication. When seen last on December 10, 1975 she was still having pain and so far had not received much relief from her medication for gout. I placed her on ColBENEMID at that time and also Motrin three times a day and asked

her to return in thirty days which she failed to do.

"It was my impression that the patient had joint pain, muscle pain which may be secondary to gout, although this could not be proven, but certainly seems to be some form of an arthralgia."

There are other medical reports that were introduced at the hearing which are set forth in the transcript but are illegible. However, enough is legible and does reveal that the plaintiff has been a consistent worker at jobs for which she was qualified. She contracted the various ailments and has suffered intermittently for years, which suffering has prevented her from continuing to work.

The latest report is that of Dr. Earl M. Woodson, M.D., heretofore mentioned and is as follows:

"The above named person has come to me on this date complaining of multiple arthritis, principally, which effects all the limbs of the upper and lower extremities. She also suffers osteoarthritis of the lumbar spine.

"This lady is 5'2" in height, weight, 175 lbs., B/P 190/94.

"History indicates this person underwent an operation for a jejuno-ileal bypass in order to help her reduce her weight which at the time was over two hundred pounds. The operation procedure was a success and the patient has responded favorably to weight reduction type diet.

"PHYSICAL EXAMINATION: Examination of the above named person indicates she is obese, well developed with height, weight and blood pressure as indicated. By history, Mrs. Dean relates that she began having arthritis pain some fifteen to twenty years ago but did not recognize the problem. Historically, the patient has been employed as a nurse's aid both in the state of California and also in Arkansas. In Arkansas she worked for West-Ark for about two years. She has worked in a laundry and motels for six to nine months. She has not worked since that time.

"In March of 1974, she had an intestinal by-pass by Dr. Harold Mings. She states that she weighed 265 ·pounds and lost down to 165 pounds.

"On examination of the head, neck are negative. The heart and lungs are negative. The abdomen shows a transverse incisional scar which is in evidence of an operation for the intestinal by-pass which is for the purpose of the weight reduction. The operative process was apparently successful.

"The abdomen is negative with the exception of the transverse abdomen scar and a lower abdominal scar. There are no abdominal masses was palpable. The breast are negative, the uterus appears to be normal in size and contour.

"The patient states she had (hang up) in the knees and the left elbow. By hang up the patient means the knee will not move and she does not have use of the knees or elbow. It appears there is a deficiency in the thyroid gland action and she is forced to take thyroid gland tablets daily.

"This patient has had two babies which was born by cesarean section.

"Mrs. Dean is now taking anti hypertension drugs for the relief of hypertension. She is suffering from multiple arthritis which involves the upper and lower extremities. She has osteo arthritis of the lumbar spine.

"The hypertension this person has is disabling because it brings about dizziness and frequent headaches. Mrs. Dean is obese but not so much as before the intestinal operation procedure.

"Since this person's disability is multiple arthritis which is growing progressively worse in nature, she has thyroid deficiency, obesity and hypertension, I would consider Mrs. Dean totally and permanently disabled from engaging in any gainful occupation.

"The conditions of this patient does not respond to therapy and this is in evidence of the total disability which it carries with it."

The case of *Blanscet v. Ribicoff* (W.D. Ark., 1962), 201 F.Supp. 257, the court beginning at page 265 said the:

". . . standard which allows the remand of a case, is stated as follows in *Wray v. Folsom*, 166 F.Supp. 390 (W.D. Ark.1958), beginning at page 394:

" * * * On the other hand, 'good cause' is a relative and highly abstract term and its meaning must be determined not only by the verbal context of the statute in which the term is employed, but also by the context of the action and procedures involved and the type of case presented. In this respect it should be remembered that while administrative determinations have, as they must, a weighty effect with a reviewing court, and the conclusions of a Referee must be accepted if based upon substantial evidence, the administrative hearing in this type of action is informal and nonadversary, and the determinations of an administrative body should not be given the stringent protection against new evidence and re-evaluation afforded to final judgments of courts of record. If new evidence were to be presented, none of the cumbersome and time-consuming requirements found in jury trials are imposed upon the administrative body. This is particularly so where the evidence sought to be introduced is written. It should also be remembered that the defendant would not be prejudiced if new evidence were to be required. In the administrative hearing, as distinguished from the cause in this court, there are no formal adversaries, and no new preparation by any party will be required. As the court said in *Schroeder v. Hobby*, 10 Cir., 1955, 222 F.2d 713, at page 715:

" 'The Social Security Act is to be liberally construed as an aid to the achievement of its Congressional purposes and objectives. Narrow technicalities which proscribe or thwart its policies and purposes are not to be adopted'.

"In these circumstances, courts must not require such a technical and cogent showing of good cause as would justify the vacation of a judgment or the granting of

a new trial, where no party will be prejudiced by the acceptance of additional evidence and the evidence offered bears directly and substantially on the matter in dispute."

In *Wesley v. Secretary of Health, Education and Welfare* (D.C., 1974), 385 F.Supp. 863, the court at page 865 said:

"To be eligible for disability benefits, a person must become disabled during a period in which he has met the special earnings requirements, 42 U.S.C. § 416(i). 'Disability' is defined as 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.' 42 U.S.C. § 423(d)(1)(A). Regulations promulgated by the Social Security Administration add substance to this definition. Significant activity is deemed 'the performance of significant physical or mental duties, . . . productive in nature,' and activity is 'gainful' if it is 'for remuneration or profit (. . . whether or not a profit is realized) . . .' 20 C.F.R. § 404.1532(b)."

The case of *Blanscet v. Ribicoff*, supra, has been cited with approval by many subsequent cases. *Jenkins v. Gardner*, 6th Cir., 430 F.2d 243 (1970); *Floyd v. Finch*, 6th Cir., 441 F.2d 73 (1971); *Gold v. Secretary of Health, Education and Welfare*, U.S. Court of Appeals 2nd Cir., 463 F.2d 38 (1972); *Goforth v. Cohen*, 290 F.Supp. 590 (1968); *Pasquale v. Cohen*, 296 F.Supp. 1088 (1969); *Stewart v. Cohen*, 309 F.Supp. 949 (1970); *Collins v. Finch*, 323 F.Supp. 1262 (1970); *Martin v. Richardson*, 325 F.Supp. 686 (1971); *Rodriguez v. Richardson*, 331 F.Supp. 545 (1971); *Epperly v. Richardson*, 349 F.Supp. 56 (1972); *Story v. Richardson*, 356 F.Supp. 1182 (1972); *Brown v. Secretary of Health, Education and Welfare*, 403 F.Supp. 938 (1975); *Lincovich v. Secretary of Health, Education and Welfare*, 403 F.Supp. 1307 (1975). See also annotation 22nd ALR 3rd 440 and annotation 23rd ALR 3rd 1034.

It is not contended by anyone that the plaintiff does not and is not presently suffering much pain. The decision of the Administrative Law Judge adopted by the Appeals Council is based only on the fact that the plaintiff had received much medical treatment and had undergone surgical operations which, in fact, failed to afford relief. No doctor or surgeon has stated that all of the medical attention she has received have restored the health of the plaintiff to the extent that she is able to pursue a gainful occupation.

The case of *Sayers v. Gardner*, (6th Cir.) 380 F.2d 940, contains a full discussion of the issues, applicable in the case now before the court. Because of the length of the opinion, the court is quoting the syllabi as follows:

"1. The Social Security Act was designed for protection of society and enacted to alleviate the burdens resting on large numbers of population because of insecurities of modern life, particularly those accompanying old age, unemployment, and disability, through establishment in advance of a provident fund for the needy worker, out of which he will be paid disability benefits, annuities, and compensation. Social Security Act, § 1 et seq., 42 U.S.C.A. § 301 et seq.

"2. A person who is unable except under great pain to engage in substantial gainful activity in which he might be employable, considering his age, training, work experience, and physical and mental capacities, is 'disabled' for purposes of the Social Security Act. Social Security Act, § 1 et seq., 42 U.S.C.A. § 301 et seq.

"3. Even pain unaccompanied by objectively observable symptoms but nevertheless real to sufferer and so intense as to be disabling will support a claim for social security disability benefits. Social Security Act, § 1 et seq., 42 U.S.C.A. § 301 et seq.

"4. The fact that there is such a subjective symptom as pain does not mean that it ranks as a lesser type of disability for social security disability benefits purposes. Social Security Act, § 1 et seq., 42 U.S.C.A. § 301 et seq.

"5. The criteria to consider in determining a social security disability benefits claimant's ability or inability to engage in substantial gainful activity are objective medical facts, diagnoses, expert medical opinions on subsidiary questions of fact, subjective evidence of pain and disability testified to by claimant, and his educational background, work history, and age. Social Security Act, § 1 et seq., 42 U.S. C.A. § 301 et seq.

"6. The holding that pain in itself was not enough to constitute disabling impairment for social security disability benefits purposes and that the pain which claimant suffered was required to do more than hurt and to substantially aggravate the malady was reversible error. Social Security Act, § 1 et seq., 42 U.S.C.A. § 301 et seq.

"7. The holding that social security disability benefits claimant's impairment was required to be "medically determinable," i. e. supported by objective clinical or laboratory evidence, was clearly erroneous. Social Security Act, § 1 et seq., 42 U.S.C.A. § 301 et seq."

The case has been cited and approved by numerous courts.

The court has reviewed all of the evidence that was before the Administrative Law Judge and the Appeals Council, and is convinced that plaintiff has established "good cause" for remanding the case and an order will be entered remanding the case to the Secretary of Health, Education and Welfare for further and complete consideration.