**Betty J. STIDMAN, Plaintiff,**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant.**

No. 77–2058.

United States District Court,
W. D. Arkansas,
Fort Smith Division.

Nov. 8, 1977.

H. K. Westmoreland, Westmoreland & Westmoreland, Fort Smith, Ark., for plaintiff.

Robert E. Johnson, U. S. Atty., J. Michael Fitzhugh, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

OPINION

JOHN E. MILLER, Senior District Judge.

There is before the court plaintiff's motion filed July 15, 1977 supported by brief to remand this claim to the Secretary of Health, Education and Welfare. Preceding the filing of the motion, the following transpired.

Plaintiff filed on July 11, 1975 with the Secretary an application for disability insurance benefits in which she alleged that she was suffering from nervousness, heart condition, totally blind in right eye and with less than fifty percent vision in the left eye and that she had been disabled and unable to work since December 20, 1974.

The application was denied and, upon request of plaintiff, it was reconsidered by the Appeals Council and the reconsideration denied on February 6, 1976.

Plaintiff then requested a hearing before an Administrative Law Judge. A hearing was held on May 17, 1976 and on December 21, 1976 the Administrative Law Judge rendered his opinion finding that the plaintiff is not disabled as that term is defined by the Social Security Act and that plaintiff is not entitled to the establishment of a period of disability or disability insurance benefits.

On April 12, 1977, the Appeals Council decided the decision of the Administrative Law Judge is correct.

Plaintiff obtained an order from Chief Judge Williams on April 23, 1977, granting her leave to proceed in Forma Pauperis without the prepayment of fees or costs or the giving of security therefor. She then filed her complaint for Special Review of the proceedings in which she requested that she be granted sixty days from date of filing of complaint within which to file new and material evidence in support of a motion to remand which she contemplated filing.

Additional time was granted defendant in which to file answer to the complaint and answer was filed July 7, 1977 in which defendant prayed that the court enter judgment dismissing the complaint.

On July 15, 1977, plaintiff filed her motion to remand and brief in support thereof, in which she alleged that Section 404.957, Regulations No. 4, Title 20, Code of Federal Regulations, permits the reopening of a prior initial determination of decision of the Administrative Law Judge or of the Appeals Council, within four years after the date of the notice of the initial determina-tion, upon a finding that good cause exists pursuant to Section 404.958 of the Regulations.

Attached to the motion is a medical report of Dr. Millard C. Edds, Edds Clinic, P. A., 11th and Chestnut Streets, Van Buren, Arkansas, dated February 14, 1977. Also attached is an additional medical report of Dr. Edds dated May 5, 1977.

The prayer of the motion to remand is that "plaintiff having presented new and material evidence herein showing 'good cause' prays that this court issue its order remanding this cause to the defendant for further administrative consideration and action".

In addition to filing the motion above stated on July 15, 1977, the plaintiff on August 12, 1977 filed a motion for summary order to remand. In the third paragraph thereof states:

"plaintiff herein adopts and makes a part here as though written herein word for word, all statements, references, exhibits and attachments as set forth, contained and attached to pleadings as alluded to and listed above."

On August 22, 1977, the defendant filed a motion for summary judgment, in which he alleged:

"There is no issue of fact and the defendant is entitled to judgment as a matter of law."

There has been filed with the court a transcript of "the entire record proceedings relating to the application of plaintiff to establish a period of disability, and her claim for disability insurance benefits under Title II of the Social Security Act, as amended."

The transcript purports to contain the testimony of plaintiff and her husband, Harold B. Stidman, however, it discloses a failure of the Administrative Law Judge to proceed in an orderly and thorough hearing.

The history of plaintiff is very inadequately stated, but it was established that she is 40 years old and had worked at various jobs including as a packer at a canning company in which she packed the

canned beans or anything else that was canned, but could not do the work because of her inability to stand for long periods of time. She worked at a packing shed but can't see now to do that kind of work. She wears a hearing aid and is completely blind in her right eye and her left eye is badly affected. She has suffered light heart attacks. She was financially unable to buy medicine.

She began work for Cates Nursing Home as a maid and worked there for twelve years when she was discharged as being incapable because of lack of sight, hearing and other ailments.

That is the last work that she has done and was unable to get further employment because of her blindness, inability to hear clearly, being very nervous and unable to follow direction.

Her husband testified that his wife was unable to do anything at all for many days at a time. We are unable to get medicine or employ assistance to do the work. Her mother formerly helped but she has no money to help with.

At the close of the hearing, the Administrative Law Judge introduced exhibits one through eleven. Plaintiff was requested to execute a medical history and disability report which she proceeded to do and which is filed as Exhibit No. 5. She was also requested to up-date the medical history and disability report which she did and which is filed as Exhibit No. 6.

The Administrative Law Judge called attention, on page 40, to the fact that this material will be introduced as Exhibit No. 12, but Exhibit No. 12 does not appear in the transcript and the material requested by the Administrative Law Judge appears in Exhibit No. 5 and No. 6.

There is some repetition between the contents of Exhibits No. 5 and No. 6 and the court will quote from the up-dated Exhibit No. 6. In that exhibit she said that before she stopped working, her illness caused her to change job duties and also change hours of work. In explanation of her condition which caused these changes, she stated:

"Hearing and backache and nervousness and bad eyes. Blind in right eye. Left eye is bad. Arthritis."

She was requested to describe the duties of her last job, nurse's aid, and she answered that the duties were:

"Taking care of bed pts. (patients) and giving baths. Taking care of up pts. (patients). Some cleaning."

She was asked to describe the kind and amount of physical activities involved in her job (supposedly nurse's aid) and describe what lifting and carrying she was required to do. She answered:

"From bed to chair and to tub-bath. Couldn't hear pt. (patient) too well. Also, hurt my back. Also, have chest pains."

She was asked on page 61 of the transcript, VII, to state how her illness prevents her from resuming her usual job duties as described in Item VI(b), which is, "describe the duties of your usual job in your own words", to which she answered:

"Hearing and down in back and nervous. Partly blind, always blind in right eye and left eye is getting dim."

Exhibits No. 7, No. 8 and No. 9 deal with "disability determination and transmittal".

Exhibit No. 7 appears to be a summary of the medical evidence, upon which the Secretary depends for a dismissal of the plaintiff's motion wherein it is stated:

"Medical evidence in the file indicates that the claimant has angina pectoris and partial blindness and fails to indicate an impairment or combination of impairments that would prevent the claimant from engaging in some form of S.T.A. that would be compatible to her age, education and residual functional capacity."

Exhibit No. 8 is similar.

Exhibit No. 9 designated as "Report of Consultative General Medical Examination", filed by Dr. Ed G. Hopkins, discloses that he diagnosed plaintiff's illness as:

"Hypothyroidism, partial blindness, angina pectoris, obesity."

Exhibit No. 11 is the report of Dr. Gary Felker, 912 Lexington, Fort Smith, Arkan-

sas, who examined plaintiff on August 28, 1975. He states:

"She has a visual acuity without correction of right eye. No light perception, left eye 20–30 minus."

Her diagnosis is:

"Absolute glaucoma, right eye, secondary to pupillary occlusion, probably secondary to an old uveitis. It appears that she has a total and permanent blindness of the right eye, the left eye being essentially normal. According to standard tables of rating visual system impairment, total loss of vision in one eye, as in this case results in a 25% impairment of the visual system and a 24% impairment of the whole man."

The court believes that the foregoing constitutes and is a fair statement of all the testimony that was introduced and considered by the Administrative Law Judge and Appeals Council.

The plaintiff, in support of her motion for summary order to remand, relies upon all statements, references and exhibits contained in and attached to the complaint and the motion to remand.

The Administrative Law Judge requested attorneys for plaintiff to furnish copy of the clinical records of Dr. Ed G. Hopkins, who is a member of Edds Clinic. They appear as Exhibit No. 13, beginning at page 82 through 104. The record is thorough and fully supports the report submitted by Dr. Millard C. Edds, on February 14, 1977, which is as follows:

"This 41 year-old white female who has a 9th grade education presents herself at 5 ft. 1 in. tall, weight 193½ pounds. Patient appears to be quite anxious and states that she is now in process of getting a divorce from her second husband. Patient has also been examined for social security disability in the past and apparently was refused. Patient was also seen by Dr. Ken Wallace, you have a copy of his report, in which he states she is totally blind in her right eye and has a 20/50 vision in her left eye. Blood pressure today is 130/80. Her pulse is 88; respirations 16. Patient has rather prominent eyes. She has rather poor oral hygiene. Neck is symmetrical. Trachea is in the midline and thyroid is not palpable. Chest is symmetrical with equal expansion, breasts are large and pendulous without masses. Lungs are clear to percussion and auscultation. Heart normal sinus rhythm, no murmurs. Heart is not clinically enlarged but the exact cardiac size cannot be ascertained by clinical examination due to her obesity. Abdomen is extremely obese. She has no specific areas of tenderness but she has voluntary muscle guarding when she is palpated on her abdomen and in the area. I am unable to feel any enlargement of organs such as liver, kidneys or spleen and there are no abnormal abdominal masses palpable. Her bowel sounds are normal and insofar as I can ascertain she has no difficulty with her bowel movements. She states she does have indigestion, heart burn and has taken medicine for her stomach in the past but it has not been doing any good. She does have some lumbarlorodosis by visual inspection and this is exaggerated by her extremely pendulous abdomen which would exaggerate her low back pain and her pain in her hips. Inspection of her extremities does not reveal any prominent varicose veins, however, again any area of her extremities that were touched she would jump and complain that this hurt. Even when her legs were touched on an area away from an actual vein. Her reflexes actually seem to be physiological. I could not elicit any abnormal reflexes. I feel her biggest problem is that she is blind in her right eye and does have weak eyes. She is wearing a hearing aid in her left ear and does seem to be somewhat hard of hearing. I think that she is: 1. Symptoms of peptic disease. 2. Probably lumbarlorodosis secondary to her obesity. 3. Chronic anxiety syndrome. Will give her Triavil 225 1 before meals and bedtime. Mylanta to take after meals and bedtime, Tolectin 200 mg. 2 3 times daily after meals. She is to be seen again in about four weeks."

On May 5, 1977, the same Doctor, in replying to a letter from Counsel for plaintiff, stated:

"In replying to your letter of April 26, 1977 requesting information on Betty Stidman after the date of February 14, 1977, we must inform you that Mrs. Stidman has not been seen in this office since that date.

"I did not feel that Mrs. Stidman was able to be gainfully employed at that time, and I feel it doubtful that she will be able to find employment in today's labor market."

In view of the reports of Dr. Edds and the various diagnoses of physicians heretofore referred to, there can be no doubt that plaintiff has shown "good cause" for an order to remand the case.

This court in the case of *Blanscet v. Ribicoff*, (W.D.Ark.1962), 201 F.Supp. 257, the court beginning at page 265 said the:

" . . . standard which allows the remand of a case, is stated as follows in *Wray v. Folsom*, 166 F.Supp. 390 (W.D. Ark.1958), beginning at page 394:

" * * * On the other hand, 'good cause' is a relative and highly abstract term and its meaning must be determined not only by the verbal context of the statute in which the term is employed, but also by the context of the action and procedures involved and the type of case presented. In this respect it should be remembered that while administrative determinations have, as they must, a weighty effect with a reviewing court, and the conclusions of a Referee must be accepted if based upon substantial evidence, the administrative hearing in this type of action is informal and nonadversary, and the determinations of an administrative body should not be given the stringent protection against new evidence and reevaluation afforded to final judgments of courts of record. If new evidence were to be presented, none of the cumbersome and time-consuming requirements found in jury trials are imposed upon the administrative body. This is particularly so where the evidence

sought to be introduced is written. It should also be remembered that the defendant would not be prejudiced if new evidence were to be required. In the administrative hearing, as distinguished from the cause in this court, there are no formal adversaries, and no new preparation by any party will be required. As the court said in *Schroeder v. Hobby*, 10 Cir., 1955, 222 F.2d 713, at page 715: " 'The Social Security Act is to be liberally construed as an aid to the achievement of its Congressional purposes and objectives. Narrow technicalities which proscribe or thwart its policies and purposes are not to be adopted'.

"In these circumstances, courts must not require such a technical and contingent showing of good cause as would justify the vacation of a judgment or the granting of a new trial, where no party will be prejudiced by the acceptance of additional evidence and the evidence offered bears directly and substantially on the matter in dispute."

In *Epperly v. Richardson*, (W.D.Va.1972), 349 F.Supp. 56, the court held:

" 'Good cause' has been held to be a relative and highly abstract term and courts have not been required to give such a technical and cogent showing of good cause as would justify the vacation of a judgment or the granting of a new trial, where no party would be prejudiced by the acceptance of additional evidence and the evidence offered bears directly and substantially on the matter in dispute. *Blanscet v. Ribicoff*, 201 F.Supp. 257 (W.D.Ark.1962); *Sage v. Celebrezze*, 246 F.Supp. 285 (W.D.Va.1965)."

In C.F.R., Title 20, § 404.958, page 201, it is stated:

" 'Good cause' shall be deemed to exist where:

(a) New and material evidence is furnished after notice to the party to the initial determination;

(b) A clerical error has been made in the computation or recomputation of benefits;

(c) There is an error as to such determination or decision on the face of the

evidence on which such determination or decision is based."

In *Wesley v. Secretary of Health, Education and Welfare*, (D.C.1974), 385 F.Supp. 863, the court at page 865 said:

"To be eligible for disability benefits, a person must become disabled during a period in which he has met the special earnings requirements, 42 U.S.C. § 416(i). "Disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Regulations promulgated by the Social Security Administration add substance to this definition. Significant activity is deemed 'the performance of significant physical or mental duties, . . . productive in nature,' and activity is 'gainful' if it is 'for remuneration or profit (. . . whether or not a profit is realized . . ." 20 C.F.R. § 404.1532(b)."

At no time has the defendant contended that the plaintiff is not under a severe disability and apparently he makes no serious contention that the disability prevents her from continuing to work and earn a living.

It is not contended by anyone that the plaintiff does not and is not presently suffering much pain. The decision of the Administrative Law Judge adopted by the Appeals Council is based only on the fact that the plaintiff had received much medical treatment and had undergone surgical operations which, in fact, failed to afford relief. No doctor or surgeon has stated that all of the medical attention she has received have restored the health of the plaintiff to the extent that she is able to pursue a gainful occupation.

The case of *Sayers v. Gardner*, (6th Cir., 1967), 380 F.2d 940, contains a full discussion of the issues, applicable in the case now before the court. Because of the length of the opinion, the court is quoting the syllabi as follows:

"1. The Social Security Act was designed for protection of society and enacted to alleviate the burdens resting on large numbers of population because of insecurities of modern life, particularly those accompanying old age, unemployment, and disability, through establishment in advance of a provident fund for the needy worker, out of which he will be paid disability benefits, annuities, and compensation. Social Security Act, § 1 et seq., 42 U.S.C.A. § 301 et seq.

"2. A person who is unable except under great pain to engage in substantial gainful activity in which he might be employable, considering his age, training, work experience, and physical and mental capacities, is 'disabled' for purposes of the Social Security Act. Social Security Act, § 1 et seq., 42 U.S.C.A. § 301 et seq.

"3. Even pain unaccompanied by objectively observable symptoms but nevertheless real to sufferer and so intense as to be disabling will support a claim for social security disability benefits. Social Security Act, § 1 et seq., 42 U.S.C.A. § 301 et seq.

"4. The fact that there is such a subjective symptom as pain does not mean that it ranks as a lesser type of disability for social security disability benefits purposes. Social Security Act, § 1 et seq., 42 U.S.C.A. § 301 et seq.

"5. The criteria to consider in determining a social security disability benefits claimant's ability or inability to engage in substantial gainful activity are objective medical facts, diagnoses, expert medical opinions on subsidiary questions of fact, subjective of pain and disability testified to by claimant, and his educational background, work history, and age. Social Security Act, § 1 et seq., 42 U.S.C.A. § 301 et seq.

"6. The holding that pain in itself was not enough to constitute disabling impairment for social security disability benefits purposes and that the pain which claimant suffered was required to do more than hurt and to substantially aggravate the malady was reversible error. Social Security Act, § 1 et seq., 42 U.S.C.A. § 301 et seq.

"7. The holding that social security disability benefits claimant's impairment was required to be 'medically determinable,' i. e. supported by objective clinical or laboratory evidence, was clearly erroneous. Social Security Act, § 1 et seq., 42 U.S.C.A. § 301 et seq."

In Section 405(g) of 42 U.S.C.A., it provides that any individual may obtain a review of a decision of the Appeals Council, the court shall have power to enter a judgment affirming, modifying or reversing the decision of the Secretary with or without remanding the cause for a hearing; the court may at anytime on good cause order additional evidence to be taken before the Secretary and the Secretary shall, after the case is remanded and after hearing such additional evidence modify or affirm his findings of fact or his decision or both.

The court has reviewed all of the evidence that was before the Administrative Law Judge and the Appeals Council and is convinced that the plaintiff has established "good cause" for remanding this case and an order will be entered remanding the case to the Secretary of Health, Education and Welfare for further and complete consideration.